[No. 7574-1-II.   Division Two.   May 27, 1986.]

WESTERN NATIONAL ASSURANCE CO., *Respondent,* v. LYNN D. HECKER, ET AL, *Appellants.*

*Craig W. Weston* and *Walstead, Mertsching, Husemoen, Donaldson & Barlow,* for appellant Hecker.

*Robert W. Huffhines, Jr.,* for appellant Nuzum.

*Dennis M. Hunter, William L. Dowell,* and *Walker, Dowell, Hunter & Twining,* for respondent.

REED, A.C.J.—Lynn Hecker and Wayne Nuzum appeal a declaratory judgment denying liability coverage under a homeowner's policy issued to Nuzum by Western National Assurance Co. for Hecker's claims against Nuzum. The trial court determined that Western had no duty to defend Nuzum and no duty to pay any recovery by Hecker in her action against Nuzum. We affirm.

In March 1983, Hecker commenced an action against Nuzum for personal injuries, emotional distress, and embarrassment resulting from "an intentional and/or negligent assault and battery" committed upon her by Nuzum. Her complaint did not specify the nature of the assault or

of her injuries. In deposition testimony Hecker and Nuzum gave conflicting versions of the incident giving rise to Hecker's complaint.

In her deposition, Hecker stated that in the early morning of October 30, 1982, Nuzum went to her house for the purpose of a sexual encounter. Nuzum and Hecker's relationship had been predominantly sexual in nature. After initial reluctance on Hecker's part on this morning, they engaged in consensual intercourse. However, after Hecker told Nuzum she wanted to stop, Nuzum committed forcible anal intercourse. Hecker suffered physical injuries requiring medical treatment and surgery and emotional injuries requiring psychiatric treatment. Hecker explained that she did not file a rape charge because she was ashamed, embarrassed and afraid.

Nuzum contends that, on the morning in question, he had been drinking alcohol and smoking marijuana and that he did not intend to enter Hecker anally nor did he know he had done so.

On the date of the incident in question, Western insured Nuzum on a homeowner's insurance policy. That policy reads, in pertinent part, as follows:

LIABILITY COVERAGE SECTION
PRINCIPAL LIABILITY AND MEDICAL
PAYMENTS COVERAGES

Coverage L—Personal Liability

We pay, up to *our* limit of liability all sums for which any *insured* is legally liable because of *bodily injury* or *property damage* caused by an *occurrence* to which this coverage applies. We will defend any suit seeking damages, provided the suit resulted from *bodily injury* or *property damage* not excluded under this coverage. . . .

Coverage M—Medical Payments to Others

We pay the necessary *medical expenses* incurred or medically determined within three years from the date of an accident causing *bodily injury* to which this coverage applies. This coverage applies only:

. . .

2. To a person away from the *insured premises* if the *bodily injury*:

. . .
b. is caused by the activities of any *insured*;

. . .
General Policy Provisions
Definitions
10. *Occurrence* means an accident, including continuous or repeated exposure to substantially similar conditions.

. . .
EXCLUSIONS
1. *Exclusions that Apply to Both Personal Liability and Medical Payments to Others.* This policy does not apply to liability:

. . .
h. caused intentionally by or at the direction of any *insured* . . .

In October 1983, Nuzum gave notice of Hecker's claim to Western. Western agreed to handle the claim and provide a defense on Nuzum's behalf, with a reservation of its right to have its duty under the policy determined at a later date. On November 4, 1983, Western exercised that right by filing a complaint for declaratory judgment against both Hecker and Nuzum, alleging that Nuzum's actions had been intentional and are therefore excluded from liability coverage under the terms of the policy. Western asked the court to determine that it had no duty to defend Nuzum against Hecker's claim and no duty to pay any sums recovered by Hecker in her action against Nuzum.

On November 16, 1983, Hecker took a voluntary nonsuit as to her claim for intentional assault and battery, thus leaving "negligent assault and battery" as the sole cause of action against Nuzum.

At the declaratory judgment hearing on December 5, 1983, the parties submitted the case upon an agreed set of documents, including the pleadings and depositions, and agreed that no live testimony would be heard. After hearing arguments of counsel, the trial court granted the relief prayed for in Western's complaint. In its written findings, the court found that Nuzum had intended specifically to enter Hecker anally and that he had had the mental capac-

ity to form the requisite intent. The court concluded that Nuzum intentionally assaulted Hecker, that Hecker's injuries were neither unexpected nor unforeseen, and that the unambiguous exclusion in the insurance policy precludes liability coverage for Hecker's claim. The court therefore further concluded that Western had neither a duty to defend Nuzum nor a duty to pay any recovery by Hecker.

Nuzum argues first that the use of a declaratory judgment proceeding to avoid the duty to defend is improper where the duty to defend is clear from the face of the complaint. Nuzum further argues that the trial court erred in resolving the ultimate factual issues of the underlying case at the declaratory judgment stage. However, because of the manner in which these matters were submitted to the trial court for resolution, we find it unnecessary to confront these issues directly.

Ordinarily, an insurer's duty to defend its insured arises where any facts alleged in the complaint, if proved true, would render the insurer liable under the policy. *State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 486, 687 P.2d 1139 (1984); *Safeco Ins. Co. of Am. v. McGrath*, 42 Wn. App. 58, 61, 708 P.2d 657 (1985). Thus, an insurer has no duty to defend its insured for acts specifically excluded from policy coverage. An insurer must defend, however, if the claim is potentially within the coverage of the policy. *R.A. Hanson Co. v. Aetna Ins. Co.*, 26 Wn. App. 290, 294, 612 P.2d 456 (1980). The determination of the insurer's duty to defend may be made in a declaratory judgment proceeding. *Safeco Ins. Co. v. Dairyland Mut. Ins. Co.*, 74 Wn.2d 669, 671, 446 P.2d 568 (1968); *Government Employees Ins. Co. v. Woods*, 59 Wn.2d 173, 186, 367 P.2d 21 (1961).

An insurer's duty to pay, in contrast to the duty to defend, depends upon the actual determination of the factual issues relating to coverage. *Yakima Cement Prods. Co. v. Great Am. Ins. Co.*, 14 Wn. App. 557, 563, 544 P.2d 763 (1975), *review denied*, 86 Wn.2d 1011 (1976). Normally, an insurer's duty to pay arises only when the injured party

ultimately, in the underlying tort action against the insured, prevails on facts that fall within the policy coverage. *Safeco Ins. Co. of Am. v. McGrath,* 42 Wn. App. at 61. In this case, however, the trial court found in the declaratory judgment proceeding that, based upon a determination of the factual issues relating to coverage, Western had no duty to pay. Although the court did not directly confront the duty to defend issue, its conclusion that there was no duty to pay necessitated the conclusion that there was no duty to defend.

█ Under the circumstances, we cannot find fault in the trial court's act of determining, at the declaratory judgment stage, the ultimate factual issues relating to the underlying tort action. In its complaint, Western asked the court to determine coverage, its duty to defend, and its duty to pay. In his answer, Nuzum did not object to the scope of Western's request but rather himself requested the court to make the factual determination that his act had not been intentional. Moreover, during oral argument, Nuzum argued that he did not act intentionally and suggested to the court that it give more weight to his version of the facts. Accordingly, we will not now hear Nuzum's complaint that the court resolved the factual dispute when he specifically requested the court to do so. When a party submits an issue and argues it before the court below, that party cannot complain on appeal that the trial court erred in considering and resolving that issue. *Davis v. Globe Mach. Mfg. Co.,* 102 Wn.2d 68, 77, 684 P.2d 692 (1984); *Priestley Mining & Milling Co. v. Lenox Mining & Dev. Co.,* 41 Wn.2d 101, 105, 247 P.2d 688 (1952). Thus, in this case, the duty to defend, rather than being a separate issue whose resolution depends upon a determination of the potential for coverage under the policy, *R.A. Hanson Co. v. Aetna Ins. Co., supra,* depends upon the determination of the duty to pay, *i.e.,* whether there *is* in fact coverage under the policy.[1]

---

[1]Were the circumstances otherwise, we would question the trial court's resolu-

■■ The first issue concerning policy coverage is whether, under the personal liability section, Hecker's injuries were "caused by an *occurrence* to which this coverage applies," and whether, under the medical payments section, Hecker's injuries resulted "from . . . an accident . . . to which this coverage applies." The policy defines "occurrence" as an "accident . . ." The policy does not define "accident." Therefore, the term must be given its popular and ordinary meaning. *Harrison Plumbing & Heating, Inc. v. New Hampshire Ins. Group,* 37 Wn. App. 621, 624, 681 P.2d 875 (1984). An "accident" generally means an unusual, unexpected and unforeseen event. *Harrison Plumbing & Heating, Inc. v. New Hampshire Ins. Group, supra.* An accident is never present when the insured performs a deliberate act unless some additional, unexpected, independent and unforeseen happening occurs which produces the damage. *Harrison Plumbing & Heating, Inc. v. New Hampshire Ins. Group, supra; Unigard Mut. Ins. Co. v. Spokane Sch. Dist. 81,* 20 Wn. App. 261, 579 P.2d 1015 (1978).

■ We find that the act of anal intercourse that caused Hecker's injuries is not a covered "occurrence" or "accident" under the policy issued by Western. The trial court's finding that Nuzum acted intentionally is equivalent to a finding that Nuzum performed a deliberate act. Findings of fact which are supported by substantial evidence will be upheld on appeal. *Nichols Hills Bank v. McCool,* 104

tion of the underlying factual issues. Although this issue has not been addressed directly in Washington, a number of courts in other states have held that if an injured party sues the insured and the insurer seeks a declaratory judgment concerning coverage, the court in the declaratory judgment action cannot determine the ultimate question of the insured's liability or the facts upon which such liability is based. *See, e.g., Thornton v. Paul,* 74 Ill. 2d 132, 384 N.E.2d 335 (1979); *Brohawn v. Transamerica Ins. Co.,* 276 Md. 396, 347 A.2d 842 (1975); *Employers' Fire Ins. Co. v. Beals,* 103 R.I. 623, 240 A.2d 397 (1968). An alternative to restricting the discretion of the court in a declaratory judgment action is to stay that proceeding until all the facts have been determined in the underlying tort action. The Colorado Supreme Court upheld such a procedure in *Hartford Ins. Group v. District Court,* 625 P.2d 1013 (Colo. 1981).

Wn.2d 78, 82, 701 P.2d 1114 (1985); *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959). However, an exception to this general rule is that where the trial court's findings are not based upon oral testimony and the appellate court thus stands in the same position as the trial court in looking at the facts, the appellate court should independently review the record. *See Davis v. Department of Labor & Indus.*, 94 Wn.2d 119, 124, 615 P.2d 1279 (1980); *Smith v. Skagit Cy.*, 75 Wn.2d 715, 718, 453 P.2d 832 (1969). Our independent review of the record, consisting of depositions, convinces us that the trial court was correct in concluding that Nuzum specifically intended to enter Hecker anally. We find Hecker's deposition testimony more plausible than Nuzum's. Hecker testified that Nuzum pushed her and pinned her down on the bed and proceeded to enter her anally despite her screaming for him to stop. On a prior occasion he had attempted such intercourse, but Hecker had been adamant in her refusal. Nuzum does not deny this. No evidence suggests that Hecker consented to anal intercourse and we do not believe that Nuzum entered her anally by mistake. No evidence suggests that "some additional unexpected, independent and unforeseen happening" occurred that produced Hecker's injury. Nuzum's deliberate act of anal intercourse was not an accident and therefore is not an occurrence that is covered under the homeowner's policy issued to him by Western.[2]

Even if Nuzum's act was a covered occurrence, it is excluded from coverage by operation of the exclusion for "liability . . . caused intentionally by . . . any insured." At the outset of our consideration of this issue we note the

---

[2]The trial court did not reach the question of whether Nuzum's acts constitute a covered occurrence. The court bypassed that issue and held that Nuzum's acts came within the ambit of the exclusion for intentional injury. However, the issue of whether coverage is excluded need not be reached if there is no coverage to exclude. Although we will reach both issues, we find the preferred approach is to determine whether coverage exists initially before determining whether coverage is excluded. This court may affirm on any ground within the proof before the trial court. *Shurgard Mini–Storage v. Department of Rev.*, 40 Wn. App. 721, 723, 700 P.2d 1176 (1985).

inartfully drawn language of the policy that unnecessarily clouds this issue. Clearly, one does not normally *intend* to cause *liability*. An interpretation of an insurance policy that contradicts the general purpose of the policy or results in a hardship or an absurdity is presumed to be unintended by the parties. *McDonald Indus., Inc. v. Rollins Leasing Corp.*, 95 Wn.2d 909, 913, 631 P.2d 947 (1981). Excluding the literal interpretation, the phrase in question is susceptible of two different but reasonable interpretations and is, consequently, ambiguous. *State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 484, 687 P.2d 1139 (1984). One interpretation is that what is excluded is liability because of *injury caused intentionally* by any insured. The other reasonable interpretation requires exclusion for liability because of *acts caused intentionally* by any insured.

▉ Our choice between these two interpretations is guided by the general rule that exclusionary clauses are to be strictly construed against the insurer. *Phil Schroeder, Inc. v. Royal Globe Ins. Co.*, 99 Wn.2d 65, 68, 659 P.2d 509 (1983), *modified*, 101 Wn.2d 830 (1984); *Farmers Ins. Co. v. Clure*, 41 Wn. App. 212, 215, 702 P.2d 1247 (1985). However, the meaning of an exclusionary clause must be determined in view of the policy as a whole. *Shotwell v. Transamerica Title Ins. Co.*, 91 Wn.2d 161, 166, 588 P.2d 208 (1978). With these precepts in mind, we construe the phrase to mean that the *injury must be intentionally caused* by the insured. This construction is more reasonable than the one requiring merely that the act be intentional. The latter interpretation would exclude coverage for numerous accidents where the act is intentional but where the unforeseen or unexpected occurs which causes the injury.

▉ Given our interpretation that the exclusion requires that the injury be intended, a further issue arises as to the nature of the intent that must be proved. No Washington court has directly addressed this issue. Three different views emerge from other jurisdictions. The Supreme Court of Wisconsin, in *Pachucki v. Republic Ins. Co.*, 89 Wis. 2d

703, 278 N.W.2d 898 (1979), outlines these three views:

(1) The minority view follows the classic tort doctrine of looking to the natural and probable consequences of the insured's act;

(2) The majority view is that the insured must have intended the act *and* to cause some kind of bodily injury;

(3) A third view is that the insured must have had the specific intent to cause the type of injury suffered.

(Footnotes omitted.) 89 Wis. 2d at 708. *See also* Annot., *Construction and Application of Provision of Liability Insurance Policy Expressly Excluding Injuries Intended or Expected by Insured,* 31 A.L.R.4th 957 (1984). The majority view, which we now adopt, can be summarized as follows: (1) the insured must intend both the act and the injury; (2) intent may be actual or may be inferred by the nature of the act and the accompanying reasonable foreseeability of harm; (3) once intent to cause injury is found, it is immaterial that the actual injury caused is of a different character or magnitude than that intended. *See Pachucki v. Republic Ins. Co., supra;* Annot., 31 A.L.R.4th 957, *supra; Clark v. Allstate Ins. Co.,* 22 Ariz. App. 601, 529 P.2d 1195 (1975). Under this majority view, whether an act is intentional is a separate consideration that must be distinguished from whether the actor intended to cause injury. This approach avoids the logically untenable result that unless the insured intended the *specific* injury suffered, coverage is not excluded under the intentional injury exclusion.

In the case before us, Nuzum denies, first, that he acted intentionally and, second, that he intended any injury. The trial court did not make a specific finding that Nuzum intended to injure Hecker. We need not, however, make that factual determination. We conclude that an act of forcible anal intercourse is an act of such a character that an intent to cause injury can be inferred *as a matter of law.* The character of the act is such that physical as well as mental trauma can be foreseen as accompanying it. In a recent Division One case, *Rodriguez v. Williams,* 42 Wn.

App. 633, 713 P.2d 135 (1986), this court similarly inferred intent to cause injury from a stepfather's sexual contact with his stepchild. *See also Linebaugh v. Berdish,* 144 Mich. App. 750, 376 N.W.2d 400, 405 (1985) (sexual assault of minor); *Allstate Ins. Co. v. Kim W.,* 160 Cal. App. 3d 326, 206 Cal. Rptr. 609, 613 (1984) (sexual assault of minor); *CNA Ins. Co. v. McGinnis,* 282 Ark. 90, 666 S.W.2d 689, 691 (1984) (stepfather's sexual contact with stepchild); *Horace Mann Ins. Co. v. Independent Sch. Dist. 656,* 355 N.W.2d 413, 416 (Minn. 1984) (high school coach's sexual contact with student); *Fireman's Fund Ins. Co. v. Hill,* 314 N.W.2d 834, 835 (Minn. 1982) (foster father's sexual contact with foster child). *But see MacKinnon v. Hanover Ins. Co.,* 124 N.H. 456, 471 A.2d 1166, 1168 (1984) (*actual* intention of insured determinative where insured sexually abused stepdaughter). Although, unlike the cases just cited, this case does not involve sexual relations with a minor, the nature of the act, its forcible and nonconsensual character, and the harm that certainly results makes the inference of intent no less strong. Another factor that favors this inference is that were the allegations against Nuzum proven in a criminal prosecution, he would be guilty of second degree rape. RCW 9A.44.050. The recognition of the criminal character of the act is a further recognition of the injury inherent in the commission of such an act.

Thus, because of our agreement with the trial court's finding that Nuzum acted intentionally and our finding that, as a matter of law, Nuzum intended to injure Hecker, Nuzum's act falls within the exclusion in Western's policy for "liability . . . caused intentionally." Because no coverage exists for Nuzum's act, Western has no duty to pay any sums that Hecker might recover in her suit against Nuzum. *Safeco Ins. Co. of Am. v. McGrath,* 42 Wn. App. 58, 61, 708 P.2d 657 (1985); *Yakima Cement Prods. Co. v. Great Am. Ins. Co.,* 14 Wn. App. 557, 563, 544 P.2d 763 (1975).

Further, because we find no coverage, we cannot find a duty to defend because, in the absence of coverage, there

can be no potential for coverage. Accordingly, the trial court's judgment is affirmed.

PETRICH and ALEXANDER, JJ., concur.