Gail ALTENA, Appellant,

v.

UNITED FIRE AND CASUALTY COMPANY, Appellee,

and

Senard Altena, Defendant.

No. 86–1757.

Supreme Court of Iowa.

April 13, 1988.

Randall A. Roos, Sioux Center, for appellant.

Michael P. Jacobs of Kindig, Beebe, Rawlings, Nieland, Probasco & Killinger, Sioux City, for appellee.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, LAVORATO, and SNELL, JJ.

LAVORATO, Justice.

In this declaratory judgment action, plaintiff Gail Altena asked the district court to construe two insurance policies of defendant Senard Altena to cover damages caused by his alleged sexual abuse of her. Senard's insurer, the United Fire and Casualty Company (UFC), filed a motion for summary judgment, contending that damages from Senard's acts came within an exclusion from coverage of injuries intended by the insured. Gail also moved for summary judgment, arguing that coverage is required because Senard's testimony indicates he did not intend any injury to result from his acts, although the acts themselves were intentional.

The district court granted UFC's motion and denied Gail's. It held that intent to injure must be inferred as a matter of law from such acts and that any resulting damages were therefore excluded from coverage.

Gail now asks us to reverse the district court's ruling on the summary judgment motions. But because we think UFC established as a matter of law that Senard intended injury, thus triggering the exclusion clauses of his insurance policies, we affirm.

The acts in question were committed while Gail, a twenty-year-old college student, was living in a basement apartment of Senard's home. Senard is an older, married cousin of Gail's father. Shortly after Gail moved into the apartment, Senard began to offer Gail alcoholic beverages, talk about sexual matters, and demand hugs and kisses from her. Gail, who was sexual-

ly inexperienced, was embarrassed by the physical contact and his questions about her sexual knowledge, and she attempted to ignore Senard.

Senard soon progressed to fondling Gail, and he later engaged in various sex acts. He would usually initiate these acts after following Gail into her apartment and attempting to ply her with alcohol. When Gail resisted Senard's sexual advances, he would berate her, saying she needed to have such experiences so she could learn to please her boyfriend. Senard would then forcibly undress Gail, often tearing her clothing, and commit the sex acts without her consent or active participation. This pattern continued for two months, whenever Senard was not out of the state. On at least one occasion he struck Gail during such an attack.

Over the two months she lived in the apartment Gail became increasingly upset because of Senard's behavior. In an effort to avoid the attacks, she would often talk on her telephone until late at night or stay on campus as long as possible. Senard, however, would always come to her apartment eventually and attack her. By the time her work supervisor convinced her to leave the apartment, Gail was suicidal, and she later sought medical treatment for her psychological injuries.

Gail brought suit against Senard in both the Iowa and the United States district courts, alleging seduction, sexual abuse, outrageous conduct, and interference with her right to quiet enjoyment of her apartment. In deposition testimony during those cases, Senard admitted sexual contacts with Gail but claimed that they were consensual. He also denied he intended to harm her by such contacts.

Gail brought a separate declaratory judgment action in the Iowa district court. She asked the court to construe Senard's UFC homeowner's and umbrella liability insurance policies to cover damages due to his sexual attacks on her.[1]

Senard's homeowner's policy provides:

[i]f a claim is made or a suit is brought against any insured for damages because of bodily injury ... to which this coverage applies, we will

a. pay up to our limit of liability for the damages for which the insured is legally liable....

"Bodily injury" is defined as "bodily harm, sickness, or disease including required care." This policy excludes from coverage bodily injury "which is expected or intended by the insured."

Senard's umbrella liability policy provides that UFC will "indemnify the insured for ultimate net loss in excess of the retained limit which the insured shall become legally obligated to pay as damages because of personal injury." "Personal injury" is defined by this policy as

(a) Bodily injury, sickness, disease, disability and if arising out of the foregoing, shock, mental anguish and mental injury;

....

(d) Assault and battery ... not committed by or at the direction of the insured....

The umbrella policy excludes from its coverage "any act committed by ... the insured with intent to cause personal injury."

In its ruling on the summary judgment motions, the district court recounted the undisputed facts we described above and said that

[t]he acts complained of are crimes for which criminal sanctions are provided.... The legislature must have felt that this type of conduct would have harmful results, or the intended acts would not have been outlawed. The actions complained of were intentional and without the victim's consent. Whether the perpetrator intended or expected harm to result is immaterial. Intent to inflict injury is inferred as a matter of law in connection with an intentional act of nonconsensual assault or sex activity.

Accordingly, the court granted UFC's summary judgment motion and denied Gail's, holding that UFC did not have to provide

---

1. Gail also claims UFC should provide a defense to Senard under these policies. This issue is moot, however, because UFC has already defended Senard in the Iowa district court case.

coverage for damages resulting from Senard's acts.[2] It is from these rulings that Gail appeals.

I. Our standards for review of summary judgments are summarized in *Knapp v. Simmons*, 345 N.W.2d 118, 121 (Iowa 1984):

> Summary judgment is proper when there is no genuine issue of fact and the moving party is entitled to the judgment as a matter of law. The burden of showing the nonexistence of a material fact is upon the moving party. While an adverse party generally cannot rest upon [his or her] pleadings when the moving party has supported [his or her] motion, summary judgment is still not proper if reasonable minds could draw different inferences and conclusions from the undisputed facts. In this respect, summary judgment is functionally akin to a directed verdict; every legitimate inference that [can reasonably] be deduced from the evidence should be afforded the nonmoving party, and a fact question is generated if reasonable minds can differ on how the issue should be resolved.

*Accord Behr v. Meredith Corp.*, 414 N.W. 2d 339, 341 (Iowa 1987); *Martinko v. H–N–W Assocs.*, 393 N.W.2d 320, 321 (Iowa 1986). The summary judgment record in this case consists of the pleadings, answers to interrogatories, depositions, and exhibits. We look to them to determine whether the district court properly ruled on the motions for summary judgment. *See* Iowa R.Civ.P. 237(c).

II. Both of Senard's policies exclude injuries intended by the insured. This type of exclusion is consistent with "the central idea that insurance concerns fortuitous losses only" and generally provides "no coverage for intentional loss." R.E. Keeton, *Basic Text on Insurance Law* § 5.4(b), at 291 (1971).

The district court found as a matter of law that Senard intended to injure Gail when he engaged in the various sex acts. Because all of Gail's claims are predicated

upon these acts, the ruling precludes coverage of damages resulting from them under the policies. Thus, the fighting issue in this appeal is whether a genuine issue of material fact exists as to Senard's intention to injure Gail by the acts.

The following facts are not in dispute. Each count in Gail's petition is based on actions by Senard that constitute sex acts within the meaning of our criminal statute concerning sexual abuse. *See* Iowa Code §§ 702.17, 709.1(1) (1983). Senard intended to commit those acts. Senard and Gail were both adults at the time.

Gail claims the acts were done against her will, and UFC takes no issue with this claim. Because consent in this case would preclude recovery under the policies, *see State Farm Fire & Casualty Co. v. Williams*, 355 N.W.2d 421, 424 (Minn. 1984), we proceed on the basis that Gail did not consent to the sex acts.

Under these facts, all the elements of sexual abuse are established. *See* Iowa Code § 709.1(1). Notwithstanding this conclusion, Gail maintains her claim of sexual abuse as well as her remaining claims may be established without proof of an intent to injure. Thus, Gail asserts, it is not enough that Senard intended the acts; UFC must establish that Senard had an actual or subjective intent to injure her. Because the only evidence before the district court was Senard's deposition testimony that he had no such intent, Gail argues no genuine issue of material fact was generated regarding his intent to injure. Thus, Gail concludes, the district court should have granted her motion for summary judgment and denied UFC's.

UFC, on the other hand, argues the district court was correct in determining Senard's intent to injure as an objective matter of law. UFC's position is that because Senard's acts amounted to sexual abuse, intent to injure must be inferred as a matter of law.

---

**2.** The district court also dismissed Senard's cross-claim against UFC for coverage. He has not appealed this dismissal.

These arguments generate a further issue: what kind of intent must be established under the intentional injury exclusions. As one court points out, three different views of this issue have developed:

(1) The minority view follows the classic tort doctrine of looking to the natural and probable consequences of the insured's act;

(2) The majority view is that the insured must have intended the act *and* to cause some kind of bodily injury;

(3) A third view is that the insured must have had the specific intent to cause the type of injury suffered.

*Pachucki v. Republic Ins. Co.*, 89 Wis.2d 703, 708, 278 N.W.2d 898, 901 (1979); *accord Western Nat'l Assurance Co. v. Hecker*, 43 Wash.App. 816, 825, 719 P.2d 954, 960 (1986). *See generally* Annotation, *Construction and Application of Provision of Liability Insurance Policy Expressly Excluding Injuries Intended or Expected by Insured*, 31 A.L.R. 4th 957 (1984).

According to the majority view, the intent to do the act and cause injury may be "actual or may be inferred by the nature of the act and the accompanying reasonable foreseeability of harm." *Hecker*, 43 Wash. App. at 825, 719 P.2d at 960; *see also Clark v. Allstate Ins. Co.*, 22 Ariz.App. 601, 602, 529 P.2d 1195, 1196 (1975); *Pachucki*, 89 Wis.2d at 708, 278 N.W.2d at 901. *See generally* Annotation, 31 A.L.R. 4th 957. In addition, "once intent to cause injury is found, it is immaterial that the actual injury caused is of a different character or magnitude than that intended." *Hecker*, 43 Wash.App. at 825, 719 P.2d at 960.

Although we did not expressly say so, we applied the majority view in *McAndrews v. Farm Bureau Mutual Insurance Co.*, 349 N.W.2d 117 (Iowa 1984). There the issue was whether the insurer was required by its policy to defend its insured in a civil action for assault and battery brought by a third party. The policy excluded "bodily injury ... which is either expected or intended from the standpoint of the insured." The insured argued there was a potential for coverage as there was a possibility that a factfinder could find his assault was not "intended" because it was done in self-defense.

We rejected the insured's argument and concluded the exclusion applied. *Id.* at 120. In doing so we quoted with approval the following language:

The question of self-defense is a standard of [the insured's] liability to [the victim]. It presents an issue of motive or justification for an intentionally caused harm, but *it does nothing to avoid the inference of intent to harm that necessarily follows the deliberate blow to [the victim's] face.*

*Id.* (quoting *Home Ins. Co. v. Neilsen*, 165 Ind.App. 445, 451–52, 332 N.E.2d 240, 244 (1975)) (emphasis added). The italicized language underscores by implication our acceptance of the majority view that the intent to do the act *and* to cause injury may be inferred by the nature of the act and the accompanying reasonable foreseeability of harm. *Cf. Kraus v. Allstate Ins. Co.*, 379 F.2d 443, 445 (3d Cir.1967) (when insured exploded dynamite in public place, intent to injure passersby could be inferred).

Various courts following the majority view have inferred intent to cause injury as a matter of law in cases where the insured had sexual contact with a child. These courts reason that "some harm is inherent in and inevitably results from such acts." *Linebaugh v. Berdish*, 144 Mich.App. 750, 760, 376 N.W.2d 400, 405 (1985) (insured sexually assaulted minor and sought coverage under his homeowner's policy that excluded injury "caused intentionally by or at the direction of the insured"); *accord CNA Ins. Co. v. McGinnis*, 282 Ark. 90, 666 S.W.2d 689 (1984) (incest claim against insured who sought coverage under his homeowner's policy that excluded injury "expected or intended by the insured"); *Allstate Ins. Co. v. Kim W.*, 160 Cal. App.3d 326, 206 Cal.Rptr. 609 (1984) (insured sexually assaulted minor and sought coverage under his homeowner's policy that excluded injury "intentionally caused by an insured"); *Horace Mann Ins. Co. v.*

*Independent School Dist.*, 355 N.W.2d 413 (Minn.1984) (insured teacher sexually assaulted high school student and sought coverage under association policy that excluded "occurrences ... which are the intended consequences of action taken by ... the insured"); *Fireman's Fund Ins. Co. v. Hill*, 314 N.W.2d 834 (Minn.1982) (insured sexually assaulted foster child and sought coverage under his homeowner's policy that excluded injury "expected or intended" by the insured); *Illinois Farmers Ins. Co. v. Judith G.*, 379 N.W.2d 638 (Minn. App.1986) (insured, a minor, sexually assaulted minor children and sought coverage under parent's homeowner's policy that excluded injury "[a]rising as a result of intentional acts"); *Rodriguez v. Williams*, 42 Wash.App. 633, 713 P.2d 135 (1986) (two consolidated cases, both of which involved incest claims against the insureds who sought coverage under their homeowners' policies that excluded injuries "expected or intended by the insured"). *Contra Mac-Kinnon v. Hanover Ins. Co.*, 124 N.H. 456, 471 A.2d 1166 (1984) (incest claim against insured who sought coverage under his homeowner's policy that excluded injury "expected or intended by the insured").

Recently, one court addressed the intentional injury exclusion question in a case involving an insured who had allegedly sexually assaulted a male adult. *See State Farm Fire & Casualty Co. v. Williams*, 355 N.W.2d 421 (Minn.1984). There the intentional injury exclusion was the same as the exclusion here. *See id.* at 423. Although the victim was physically handicapped, he lived independently in an apartment at the time of the sex acts. The case was tried on the following stipulated facts. Although the insured intended to, and did, have sexual contacts with the victim, he did not intend to injure him. The victim alleged the sexual contacts were objectionable and accomplished without his consent. The insured, on the other hand, believed the contacts were with the victim's consent. *Id.*

Refusing to distinguish the case from sexual assaults upon minors, the court said:

Both of those cases [*Fireman's Fund Insurance Co. v. Hill* and *Horace Mann Ins. Co. v. Independent School District*] involved sexual assaults on minors by persons in authority over them. Does the fact Williams, the victim, was an adult distinguish this case? We think not. Neither the insured nor the insurer in entering into the insurance contract contemplated coverage against claims arising out of nonconsensual sexual assaults. On the other hand, if the sexual assaults were consensual, as asserted by respondent Keller, there would be no assault and hence no claim for recovery.

*Id.* at 424.

One other court has considered the intentional injury exclusion question in circumstances involving a sexual assault on an adult. *See Western Nat'l Assurance Co. v. Hecker*, 43 Wash.App. 816, 719 P.2d 954 (1986). The insured and the victim, both adults, were engaging in consensual sexual intercourse until they reached a point where the victim wanted to stop. Ignoring the victim's protestations, the insured committed forcible anal intercourse. The victim sued the insured for personal injuries resulting from the act. The insured sought coverage under his homeowner's policy, which excluded coverage for intentional injuries caused by the insured. The insurer promptly filed a declaratory judgment action against both, asking the court to determine that it had no duty to defend and no duty to indemnify because of the intentional injury exclusion provision. The trial court found that the insured had intended specifically to commit the act. It concluded the victim's injuries were neither unexpected nor unforeseen and that the policy exclusion precluded liability coverage for her claim.

Expressly adopting the majority view and applying it to the facts of the case, the court said:

In the case before us, [the insured] denies, first, that he acted intentionally and, second, that he intended any injury. The trial court did not make a specific finding that [the insured] intended to injure [the victim]. We need not, however,

make that factual determination. We conclude that an act of forcible anal intercourse is an act of such a character that an intent to cause injury can be inferred *as a matter of law*. The character of the act is such that physical as well as mental trauma can be foreseen as accompanying it.... Although, unlike the cases just cited, this case does not involve sexual relations with a minor, the nature of the act, its forcible and nonconsensual character, and the harm that certainly results make the inference of intent no less strong.

*Hecker*, 43 Wash.App. at 825–26, 719 P.2d at 960 (citations omitted). In addition, the court noted that were the allegations proven in a criminal prosecution, the insured would be guilty of second-degree rape. *Id.* at 826, 719 P.2d at 960. The criminal character of the act provided "further recognition of the injury inherent in the commission of [it]." *Id.*

Similarly, we think the majority view is the better rule, and we adopt it. Senard admitted the sex acts but denied intending to injure Gail. Nevertheless, the nature of the acts, their repetition, the force used in carrying them out, and Gail's admitted sexual naivete convince us to infer intent to injure as a matter of law. These circumstances make it foreseeable that Gail would suffer at least mental trauma if not physical injury.

Another factor favoring this inference is that were the allegations against Senard proven in a criminal prosecution, he would be guilty of sexual abuse. *See* Iowa Code § 709.1(1). *Compare Hecker*, 43 Wash. App. at 826, 719 P.2d at 960. The criminal character of the acts is a further recognition of the injury inherent in the commission of them. *Hecker*, 43 Wash.App. at 826, 719 P.2d at 960.

Recent studies on the trauma of rape reinforce the criminal law's recognition of injury inherent in the commission of this offense. *See, e.g.,* Weis & Weis, "Victimology and the Justification of Rape," in 5 *Victimology: A New Focus* 3 (I. Drapkin & E. Viano ed. 1973); *see also State v. McKee*, 312 N.W.2d 907, 913–14 (Iowa

1981). In many cases the psychic wounds are more devastating and long-lasting than the physical injuries. Weis & Weis, at 16. They include a decrease in self-esteem, consequential inability to entertain a normal heterosexual relationship, and ultimately suicidal behavior. *Id.* In addition, these victims suffer feelings of depersonalization, humiliation, violation, and defilement. *Id.* at 16–17. These psychic injuries are magnified the more limited the victim's previous sexual experience has been. *Id.* at 18.

Our conclusion, of course, means Senard has no coverage for his sexual misconduct toward Gail. As we have shown, coverage is precluded because the injuries caused by Senard's misconduct were intentional rather than fortuitous. *See* Keeton § 5.4(b), at 291 (insurance generally covers only fortuitous, not intentional, loss). Further, we think that neither Senard, in purchasing his homeowner's policy, nor UFC, in issuing it, contemplated coverage against claims arising out of nonconsensual sex acts. As one court noted, "[t]he average person purchasing homeowner's insurance would cringe at the very suggestion that [the person] was paying for such coverage. And certainly [the person] would not want to share that type of risk with other homeowner's policyholders." *Rodriguez*, 42 Wash.App. at 636, 713 P.2d at 137–38.

Moreover, our own sense of propriety dictates that coverage for these types of criminal acts should be against the public policy of this state. Such a holding is in accord with the general rule that insurance to indemnify an insured against his or her own violation of criminal statutes is against public policy and therefore void. *See* 44 C.J.S. *Insurance* § 242(b), at 1005 (1945); *cf.* McNeely, *Illegality as a Factor in Liability Insurance*, 41 Colum.L.Rev. 26, 26, 60 (1941) (allowing coverage for criminal acts removes financial deterrent; hence, denying coverage serves public policy of deterring anti-social conduct). As one court noted, "[t]he public policy governing such contracts is that one should not profit from his own wrongful act...." *New Amsterdam Casualty Co. v. Jones*, 135 F.2d

191, 193–94 (6th Cir.1943). Our holding here, however, should not be interpreted to mean that we condemn insurance coverage for all forms of intentional misconduct. For example, we have held that it is not against the public policy of this state to provide insurance coverage for punitive damages. *Skyline Harvestore Sys. v. Centennial Ins. Co.*, 331 N.W.2d 106, 108–09 (Iowa 1983).

III. We conclude the district court correctly inferred as a matter of law that Senard intended to injure Gail by engaging in the various sex acts. Consequently, no genuine issue of material fact was generated regarding that intent. Accordingly, the court correctly granted UFC's motion for summary judgment. Because of the intentional injury exclusions in both policies, the result of the court's ruling precluded coverage of Senard's sex acts that form the basis of Gail's claims against him. The court's ruling on UFC's motion rendered Gail's motion for summary judgment moot. Accordingly, the court was correct in denying her motion.

Finding no error, we affirm.

AFFIRMED.