[No. 55813-2. En Banc. July 13, 1989.]

GRANGE INSURANCE COMPANY, *Respondent,* v. MARTIN BROSSEAU, ET AL, *Appellants.*

---

*Jeff C. Mapes* (*Tom Barnett* and *Imperati, Barnett, Sherwood & Coon, P.C.,* of counsel), for appellants.

*Bullivant, Houser, Bailey, Pendergrass & Hoffman,* by *R. Daniel Lindahl* and *Douglas F. Foley,* for respondent.

BRACHTENBACH, J.—At issue is whether Grange Insurance Association has a duty to defend its insured in a wrongful death action where the insured allegedly killed the decedent in that action in self–defense. Under the particular circumstances of this appeal, this question depends upon the scope of coverage provided by the two insurance policies involved.

Martin Brosseau, doing business under the name Longhorn Pak, shot and killed Lennis W. Anderson with a shotgun. The shooting occurred at Brosseau's place of business,

a meat cutting plant. According to Brosseau, he was closing up the plant for the evening, accompanied by his niece, Anderson's wife, when Anderson attacked him with a knife. Brosseau maintains that he acted in self–defense. Anderson's wife and a guardian ad litem for Anderson's minor children sued Brosseau and Longhorn Pak for wrongful death. Brosseau tendered defense of the suit to Grange Insurance Association (Grange), with whom he had two insurance policies.

The first of these policies is a general automobile liability policy with a manufacturer's liability rider. This policy provides coverage for bodily injury "caused by an *occurrence . . .* and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such *bodily injury . . .* even if any of the allegations of the suit are groundless, false or fraudulent . . .". Clerk's Papers, at 47. "Occurrence" is defined as "an accident, including continuous or repeated exposure to conditions, which results in *bodily injury* or *property damage* neither expected nor intended from the standpoint of the *insured*". Clerk's Papers, at 43.

The second policy is a homeowner's policy. This policy provides coverage for bodily injury caused by an "occurrence"; here, "occurrence" is defined as "an accident, including injurious exposure to conditions, which results, during the policy term, in bodily injury or property damage." Clerk's Papers, at 61. This policy excludes coverage for bodily injury "either expected or intended from the standpoint of the insured." The homeowner's policy also sets forth Grange's right and duty to defend.

Grange brought a declaratory judgment action seeking a determination that it had no duty to defend Brosseau in the wrongful death action. Grange moved for summary judgment, arguing that it had no duty to defend because Brosseau's act of killing Anderson was intentional and therefore neither policy provided coverage. Grange also argued that even if Brosseau acted in self–defense, his act was still intentional and not accidental. The trial court

granted Grange's motion for summary judgment, holding that there was no coverage and that Grange had no duty to defend. Brosseau appealed. The Court of Appeals certified the case to this court, which accepted certification. We affirm.

■ Generally, insurers who have reserved the right and duty to defend must defend any suit where facts are alleged which, if proven, would render the insurer liable. *Greer v. Northwestern Nat'l Ins. Co.,* 109 Wn.2d 191, 197, 743 P.2d 1244 (1987); *State Farm Gen. Ins. Co. v. Emerson,* 102 Wn.2d 477, 486, 687 P.2d 1139 (1984). Whether there is a duty to defend is normally determined from the complaint itself. *Holland Am. Ins. Co. v. National Indem. Co.,* 75 Wn.2d 909, 911, 454 P.2d 383 (1969); *Briscoe v. Travelers Indem. Co.,* 18 Wn. App. 662, 665, 571 P.2d 226 (1977). The two policies at issue here provide that Grange has the duty to defend even if the allegations of the suit are groundless, false, or fraudulent.

The complaint in the wrongful death action alleged negligence on Brosseau's and Longhorn Pak's part. There is an apparent question as to whether the complaint sufficiently set forth facts giving rise to a duty to defend, and, if not, whether Grange otherwise had a duty to investigate the facts to determine if there was potential liability before it could decline to defend. *See E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.,* 106 Wn.2d 901, 908, 726 P.2d 439 (1986); *Insurance Co. of North Am. v. Insurance Co.,* 17 Wn. App. 331, 334, 562 P.2d 1004 (1977). However, Brosseau has not raised as an issue on this appeal the question whether the complaint alone sufficiently alleges facts under which Grange would be liable. Instead, the parties focus solely on whether injury resulting from an insured's act of self-defense is covered and not excluded by the two policies involved, reasoning that if such coverage exists, Grange has a duty to defend Brosseau in the wrongful death action. We note that at oral argument before this

court counsel for Grange explained that it is defending Brosseau in the wrongful death action under a reservation of rights.

In light of Brosseau's failure to raise the issue, we decline to discuss the sufficiency of the complaint, and instead reach the coverage question.

This matter is here on summary judgment. The trial court necessarily held as a matter of law that injury resulting from the insured's act of self–defense is not covered by either policy. We assume for purposes of this review that Brosseau acted in self–defense, an assumption supported by Brosseau's deposition testimony. Counsel for Grange agreed at oral argument that this assumption should be made, but correctly observed that the factual question would ultimately be for the trier of fact.

The issue we face is one of first impression in Washington. We examine several representative cases from other jurisdictions, but find relevant case law from our own state compelling.

■■ Interpretation of an insurance policy is a question of law. *Sears v. Grange Ins. Ass'n,* 111 Wn.2d 636, 638, 762 P.2d 1141 (1988). The policy is construed as a whole, and "should be given a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance." *Sears,* at 638.

■ Here, both policies provide coverage for an "occurrence," where bodily injury results from "an accident." For insurance coverage, this court has said that "an accident" is an unusual, unexpected, and unforeseen happening. *Tieton v. General Ins. Co. of Am.,* 61 Wn.2d 716, 721, 722, 380 P.2d 127 (1963); *accord, Western Nat'l Assur. Co. v. Hecker,* 43 Wn. App. 816, 822, 719 P.2d 954 (1986); *Harrison Plumbing & Heating, Inc. v. New Hampshire Ins. Group,* 37 Wn. App. 621, 624, 681 P.2d 875 (1984). Moreover,

an accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen happening occurs which produces or brings about the result of injury or death. The means as well as the result must be unforeseen, involuntary, unexpected and unusual.

(Footnotes omitted.) *Unigard Mut. Ins. Co. v. Spokane Sch. Dist. 81,* 20 Wn. App. 261, 263–64, 579 P.2d 1015 (1978); *accord, Detweiler v. J.C. Penney Cas. Ins. Co.,* 110 Wn.2d 99, 104, 751 P.2d 282 (1988); *Johnson v. Business Men's Assur. Co. of Am.,* 38 Wn.2d 245, 249, 228 P.2d 760 (1951); *Pierce v. Pacific Mut. Life Ins. Co.,* 7 Wn.2d 151, 162, 109 P.2d 322 (1941); *Grange Ins. Ass'n v. Authier,* 45 Wn. App. 383, 385, 725 P.2d 642 (1986), *review denied,* 107 Wn.2d 1024 (1987); *Briscoe v. Travelers Indem. Co., supra* at 666.

In his deposition testimony Brosseau explained that Anderson was coming at him with a knife, that Anderson was "going to gut" him, and that there was no doubt in his mind. He stated: "I shoved [Anderson's wife] to one side and I grabbed the slide on that pump gun, I pulled the trigger and I pumped it and I shot him right on that second button." Clerk's Papers, at 10, 27. Brosseau's statement establishes that he pumped the shotgun, aimed it at Anderson, and pulled the trigger. Brosseau's own words confirm that he deliberately fired the shotgun at Anderson. The fact that he claims to have done so in self–defense in no way negates the deliberate nature of his act.

Because Brosseau's act was deliberate, the next inquiry, in determining whether Anderson's death was the result of an "accident," is whether there was any additional unexpected, independent and unforeseen happening which caused the death. In *Detweiler,* this court in an exhaustive opinion surveyed our state courts' published opinions concerning this inquiry. Under the circumstances here we need not engage in the same extensive analysis; nothing in the

record even remotely suggests that any additional unexpected, independent and unforeseen happening occurred which caused Anderson's death.[1]

Moreover, these policies do not cover bodily injury either expected or intended from the standpoint of the insured. We recognize that exclusionary clauses are strictly construed against the insurer, especially if they are of uncertain intent. *Phil Schroeder, Inc. v. Royal Globe Ins. Co.*, 99 Wn.2d 65, 69, 659 P.2d 509 (1983), *modified on reconsideration*, 101 Wn.2d 830, 683 P.2d 186 (1984). This principle does not dictate a result in Brosseau's favor, however. Serious bodily injury, including death, was, from Brosseau's standpoint, obviously an expected result of his intentional act of shooting Anderson. Because the death was expected from Brosseau's standpoint, neither policy provides coverage. Grange has no duty to defend Brosseau in the wrongful death action.

As we indicated, authority is split on the question whether injury resulting from an act of self–defense is covered by insurance policies with the same language or with somewhat different language from that found in the policies at issue here. *See generally, e.g.,* Annot., *Acts in Self–Defense as Within Provision of Liability Insurance Policy Expressly Excluding Coverage for Damage or Injury Intended or Expected by Insured,* 34 A.L.R.4th 761 (1984). Those courts finding such coverage do so on a number of theories. We find none of them compelling here, particularly in light of settled Washington law.

For example, in *Preferred Mut. Ins. Co. v. Thompson,* 23 Ohio St. 3d 78, 491 N.E.2d 688 (1986), the court reasoned that providing coverage in cases involving acts of self–

---

[1]Some materials designated for inclusion in the Clerk's Papers were not considered by the trial court in deciding the summary judgment motion. We therefore have not relied upon these materials in any way, but, lest there be any doubt about the matter, we observe that nothing in them suggests any additional unexpected, independent and unforeseen happening which brought about Anderson's death. Even if those materials were properly before us, our conclusion on this question would not change.

defense served public policy and the purpose underlying intentional acts exclusions. The court said that generally an individual may not purchase liability insurance coverage against a claim arising from the intentional infliction of injury on the person or property of another. If one could do so, an important disincentive to commission of intentional torts, the threat of a successful civil suit, would be removed. However, because an act of self–defense is a reaction and not misconduct, the court reasoned, no purpose is served by denying coverage. Further, the court said, "an 'expected or intended injury' exclusion prevents individuals from purchasing insurance as a shield for their *anticipated intentional misconduct*. Without such an exclusion, an insurance company's risk would be incalculable." *Thompson,* at 81. *See also, e.g., Transamerica Ins. Group v. Meere,* 143 Ariz. 351, 694 P.2d 181 (1984); *State Farm Fire & Cas. Co. v. Poomaihealani,* 667 F. Supp. 705 (D. Hawaii 1987).

We find unacceptable the argument that, because insurance contracts may validly exclude coverage for wrongful acts (intentional torts), and, indeed, public policy or law actually prohibits the purchase of insurance covering such acts, acts of self–defense which are lawful are therefore covered. That which public policy prohibits does not determine that which must be considered covered. Similarly, we do not accept the principle that because intentional acts are excluded in order to avoid control of the risks by the insured, acts of self–defense are included because the insured does not control the risks. Simply because a risk is calculable does not mean it is covered.

Another reason which courts give for holding that injuries resulting from acts of self–defense are covered is that an insured acting in self–defense is reacting to a perceived threat of bodily harm and the insured's intent is self–preservation and not harm to the other. *See, e.g., Meere,* 694 P.2d at 188; *Poomaihealani,* at 708; *Allstate Ins. Co. v. Novak,* 210 Neb. 184, 313 N.W.2d 636 (1981); *Thompson,* at 691.

This approach just does not comport with the plain language of the policies at issue here, nor is it consistent with our rule that an accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen happening produces or brings about the injury or death. Further, one can react and still act intentionally and deliberately, and, as we have explained, there is no doubt that injury to Anderson was the intended, expected consequence of Brosseau's actions in chambering the cartridge, aiming, and firing at Anderson's chest at point–blank range, regardless of any ultimate purpose of self–preservation.

Some courts have further reasoned that acts of self–defense are covered because the insurance policy in question was ambiguous and therefore to be construed in favor of the insured. *See, e.g., Poomaihealani,* at 709; *Berg v. Fall,* 138 Wis. 2d 115, 405 N.W.2d 701 (Ct. App.), *review denied,* 139 Wis. 2d 859, 415 N.W.2d 162 (1987).

We find no ambiguity here. The policies cover only accidents, a term long defined in this state's cases, and the facts as stated by the insured unambiguously take the incident here out of this definition. The policies do not cover injuries expected or intended from the standpoint of the insured. Again, there is no serious question that when Brosseau intentionally shot Anderson, he expected serious injury or death to result.

We agree with the Indiana Court of Appeals in *Home Ins. Co. v. Neilsen,* 165 Ind. App. 445, 332 N.E.2d 240 (1975), that members of the public may wish to insure themselves from the cost of defending liability actions where the facts ultimately exonerate them, and that it would not violate public policy to permit an insurance company to defend an action where the insured is excused on the basis of self–defense. However, the Indiana Court of Appeals would not construe the ambiguity it found in the policy involved in *Neilsen* (in an exclusion for bodily injury or property damage caused intentionally by or at the direction of the insured) to afford such coverage. The court said

that to do so would be to rewrite the contract agreed to by the parties. We, too, will not rewrite the policy here to provide for coverage when the plain language of the policy does not. *See Britton v. Safeco Ins. Co. of Am.,* 104 Wn.2d 518, 528, 707 P.2d 125 (1985); *Progressive Cas. Ins. Co. v. Cameron,* 45 Wn. App. 272, 276, 724 P.2d 1096 (1986). Nor, even if we perceived any public policy favoring coverage here, would we invoke such public policy to override the provisions of these policies. *See State Farm Gen. Ins. Co. v. Emerson,* 102 Wn.2d 477, 483, 687 P.2d 1139 (1984).

Other courts have found injury resulting from acts of self–defense not to be within the coverage of the insurance policies in question. One Florida appellate court held that the insured's act in shooting another in self–defense was excluded under a provision excluding bodily injury "'intended from the standpoint of the insured.'" *Clemmons v. American States Ins. Co.,* 412 So. 2d 906, 907, 34 A.L.R.4th 755 (Fla. Dist. Ct. App.), *review denied,* 419 So. 2d 1196 (1982). The court reasoned that the insured intentionally shot the other person, with the immediate and obvious result of inflicting serious bodily harm. *Clemmons,* at 910. The court found irrelevant the fact that the ultimate goal of the insured was to avoid harm to himself. *But see Marshall v. State Farm Fire & Cas. Co.,* 534 So. 2d 776 (Fla. Dist. Ct. App. 1988). In *Hartford Accident & Indem. Co. v. Krekeler,* 363 F. Supp. 354 (E.D. Mo. 1973), *reversed on other grounds,* 491 F.2d 884 (8th Cir. 1974), the court disposed of the argument that while the insured intentionally struck another, he did so in self–defense not intending to physically injure the other, by reasoning that it was inescapable that the insured intended the movement of his own arm, the clenching of his fist, and the forceful contact between his fist and the other. The court said it belied reason to say that the insured did not intend to physically injure the other. In *Yother v. McCrimmon,* 147 Mich. App. 130, 383 N.W.2d 126 (1985), the policy contained an exclusion for bodily injury neither expected nor intended from the standpoint of the insured. The court held that injury

resulting from the insured's act of self-defense was "the natural, foreseeable, and 'expected' result of [the insured's] intentional act of wielding a tire iron." *Yother,* at 134. Therefore, the court concluded, the injury was excluded from coverage. *See also Allstate Ins. Co. v. Cannon,* 644 F. Supp. 31 (E.D. Mich. 1986); *Stein v. Massachusetts Bay Ins. Co.,* 172 Ga. App. 811, 324 S.E.2d 510 (1984); *McAndrews v. Farm Bur. Mut. Ins. Co.,* 349 N.W.2d 117 (Iowa 1984).

Nothing in our opinion today is intended to disapprove an individual's lawful actions taken in self-defense. The question here is solely one of insurance coverage.

Affirmed.

CALLOW, C.J., and UTTER, DOLLIVER, PEARSON, ANDERSEN, DURHAM, and SMITH, JJ., concur.

DORE, J. (dissenting)—I dissent. It was error for the court to hold as a matter of law that Anderson's death resulting from Brosseau's act of self-defense was not covered by his insurance. The determination of whether an occurrence, which triggers coverage under the policy, took place is a disputed question of fact which precludes this case from being dismissed on summary judgment. Further, an injury resulting from an act committed by an insured in self-defense is not an expected or intended act from the standpoint of the insured. I would reverse the summary judgment and remand for trial on the disputed factual issues regarding coverage.

## FACTS

Defendant Brosseau described the circumstances leading up to Anderson's death in answers given at his deposition:

Q When you saw his hand raise up, did you—were you under the impression it was a continuous motion that was meant to actually have the knife at your body?
A He was from here—
Q Was he walking towards you with the knife raised?

A No, he was—when I seen him, he was not walking. He was moving at a good pace.

Q He was walking fast?

A Very fast.

Q And he was lifting the knife up as you were walking forward.

A What I remember most is it was up and he was moving this way.

Q You have, just for the record, you have got your fists raised up about equal with your head, would you say that's basically about as far as he had it raised himself?

A I couldn't say because he was—I wouldn't say it was as high as his head. He was getting too close. I mean, he was already on it on a downward swing when I shot him.

Q So in your opinion he was actually trying to strike you with the knife?

A He was going to gut me, there was no doubt in my mind.

Q Could you tell what part? Did you have an opinion or any understanding as to what part of your body he was aiming for with your knife?

A Just the front of me.

Q When you shot him, how far would you estimate the knife was from you?

A Probably two feet.

Q Let's make sure we have got the sequence of events because I know that these things move very quickly, but I would like to get an exact understanding of what you saw right before you fired the shot. He was walking quickly towards you and raising the knife at you while he was walking, correct, is that what you saw?

A I did not see him pick up the knife from the, you know, all I seen was when he turned away from the table. And I glanced over to her because I did not see him pick up the knife from the table. He was reaching, apparently, and I seen him and I didn't even see him come in the door because I had been talking to her as we walked back, see. And I remember telling her that I'll pick up the kids Wednesday. And by that time I looked up and he was on me.

. . .

Q Did you look at his eyes before he—

A He was wild.

Q Could you tell if he was looking at you or looking at her?

A I think he was looking at me. I was ahead of her just far enough that I was the one that was going to get stuck first.

Q In your opinion he was aiming the knife for you?

A Oh, yes, yes, I was in his way.

Q And could you tell whether his arm was in a swing apart from the fact that his arm had been raised at you and he was advancing with his knife?

A No, he was moving this way when I shot him.

Q Was his arm moving as well as his body when you shot him, was his arm thrusting the knife towards you at the point in time when you saw him?

A I don't remember that. All I remember is when I shot him he was extended like this. I remember that real—everything started from then on.

Q And it appeared to you as though he was trying to hit you with the knife—

A There was no doubt in my mind.

Clerk's Papers, at 27–30.

### STANDARDS GOVERNING SUMMARY JUDGMENT

The procedural question presented is whether the trial court correctly dismissed this case on summary judgment. In reviewing a summary judgment, the reviewing court must consider all evidence and inferences therefrom in favor of the nonmoving party. *Hontz v. State,* 105 Wn.2d 302, 714 P.2d 1176 (1986). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). The burden is on the moving party to prove there is no genuine issue as to a fact which could influence the outcome at trial. *Hartley v. State,* 103 Wn.2d 768, 774, 698 P.2d 77 (1985). Only when reasonable minds could reach but one conclusion, may questions of fact be determined as a matter of law. *LaPlante v. State,* 85 Wn.2d 154, 531 P.2d 299 (1975).

The policies in question provide coverage for bodily injury caused by an occurrence. Clerk's Papers, at 47, 60. Occurrence is defined as an "accident" which results in bodily injury. Clerk's Papers, at 43, 61. Each policy excludes coverage for bodily injury either "expected" or "intended from the standpoint of the Insured." Clerk's

Papers, at 43, 60. The concept of accident includes deliberate acts where an "additional unexpected, independent and unforeseen happening occurs which produces or brings about the result of injury or death." *Detweiler v. J.C. Penney Cas. Ins. Co.*, 110 Wn.2d 99, 104, 751 P.2d 282 (1988), quoting *Unigard Mut. Ins. Co. v. Spokane Sch. Dist. 81,* 20 Wn. App. 261, 263–64, 579 P.2d 1015 (1978).

The substantive question presented, but glossed over by the majority, is whether the circumstances surrounding the subject act of self–defense constituted an "additional unexpected, independent and unforeseen happening". Because the determination of whether an "unforeseen happening" occurred is a factual determination necessitating a trial, the court erred in dismissing this case at summary judgment. *See Detweiler v. J.C. Penney Cas. Ins. Co., supra; McKinnon v. Republic Nat'l Life Ins. Co.,* 25 Wn. App. 854, 860, 610 P.2d 944 (1980).

In *Detweiler,* the court stated:

> Although the result of claimant's action (being struck by metal fragments in the neck, face and eye and sustaining injuries therefrom) was doubtless unintended, the means (shooting bullets from a gun at a nearby steel target) were obviously intended. It is thus arguable that claimant's injuries were a natural consequence of his actions and that no "additional unexpected, independent and unforeseen happening" occurred to bring them about. A motion for summary judgment, however, "should be granted only if, from all the evidence, reasonable [persons] could reach but one conclusion." Under the facts presented, the rapidly moving pickup truck and moving shooter resulted in changing distances between shooter and pickup. Those and other variables inherent in this confused occurrence, such as angle of fire, make "accident" a factual issue since reasonable minds could disagree as to whether under the circumstances what happened was an additional, unexpected, independent and unforeseen happening which brought about the injuries.

(Footnotes omitted.) *Detweiler,* at 108.

In the present case, Brosseau's deposition establishes that the sequence of events leading to the shooting was very quick, unexpected and confusing. Brosseau looked up

and Anderson was upon him with a knife, looking wild in the eyes and walking quickly toward him, with the raised knife only 2 feet from his chest. Reasonable minds might differ as to whether Anderson's quick approach with a knife aimed at Brosseau's chest was an additional, unexpected, independent happening which brought about the injuries. Therefore, a factual issue exists as to whether what occurred here was an accident for which the subject policies provided coverage. Consequently, the trial court erred in determining this issue as a matter of law and in granting the insurer's motion for summary judgment.

Contrary to what the majority states, the issue we face is *not* one of first impression. The majority's holding conflicts with and ignores settled Washington case law. Earlier case law recognized that death intentionally inflicted by a third person upon an insured, during self–defense, is nevertheless due to accident where it was neither foreseen, expected, or anticipated by the insured. In *Westerland v. Argonaut Grill,* 187 Wash. 437, 60 P.2d 228 (1936), the court stated

> ". . . we think the better reasoned cases, holds that injuries sustained by a person *while defending himself from an unprovoked assault* are within the terms of a policy insuring him against injury accidentally inflicted—that an injury inflicted on one who did not voluntarily enter into the affray in which he was injured is an accident. . . ."

(Italics mine.) 187 Wash. at 444; *see McGregor v. New World Life Ins. Co.,* 163 Wash. 677, 679, 1 P.2d 908 (1931); *Buckley v. Massachusetts Bonding & Ins. Co.,* 113 Wash. 13, 25, 192 P. 924 (1920); Annot., *Accident Insurance: Death or Injury Intentionally Inflicted by Another Due to Accident or Accidental Means,* 49 A.L.R.3d 673 (1973).

This court has already determined that injury *inflicted upon an insured* while the insured is defending himself from an unprovoked assault is "accidental." Consequently it would be an anomaly for it to hold, as it does today, that when the *insured inflicts* injury while defending himself from an unprovoked assault, it is not "accidental." The better and more reasoned position is to focus, not on

whether the insured inflicted or received the injury, but rather, on whether the circumstances surrounding the act of self-defense were unexpected and unforeseen and whether the actor thought he was going to be killed and/or seriously injured.

In addition to determining whether an occurrence took place, this case involves the interpretation of an exclusionary clause. In interpreting exclusionary clauses, several rules of construction apply. First, the clause should be strictly construed against the insurer. *Phil Schroeder, Inc. v. Royal Globe Ins. Co.,* 99 Wn.2d 65, 659 P.2d 509 (1983), *modified,* 101 Wn.2d 830, 683 P.2d 186 (1984). Additionally, the policy language should be construed the way an average layman would interpret it. *Farmers Ins. Co. v. Miller,* 87 Wn.2d 70, 549 P.2d 9 (1976). The relevant clauses provide that the policies do not cover bodily injury either "expected" or "intended from the standpoint of the Insured."

This court in considering a similar exclusionary clause has rejected an objective interpretation of this clause. *Rodriguez v. Williams,* 107 Wn.2d 381, 729 P.2d 627 (1986). In *Rodriguez,* the court stated:

> [I]f an objective standard is used, virtually no intentional act would ever be covered. Intentional acts which result in injury generally can be expected to result in injury.

*Rodriguez,* at 386. Furthermore, under the wording of the policy, the intent to injure is a subjective determination. "[T]he policy language itself is inconsistent with a blanket objective person standard, and the policy language must control." 107 Wn.2d at 386. Nonetheless the majority impliedly adopted an objective standard in construing the clause excluding coverage for injuries "expected" or "intended from the standpoint of the Insured." The majority states

> Serious bodily injury, including death, was, from Brosseau's standpoint, *obviously an expected result* of his intentional act of shooting Anderson. . . .
>
>   . . .

. . . [T]here is no doubt that injury to Anderson was the intended, expected consequence of Brosseau's actions in chambering the cartridge, aiming, and firing at Anderson's chest at point–blank range, regardless of any ultimate purpose of self–preservation.

(Italics mine.) Majority, at 97, 99. The majority used an objective interpretation. It believed that a person would likely suffer injury from a shooting and that a reasonable person would expect such result to occur. Respondent contends that Anderson's injuries were expected by Brosseau regardless of his actual intent or belief and therefore the exclusion applied. While doubtlessly the average purchaser of insurance would believe that a shooting would harm a person, the policy specifically states that the insured must expect or intend harm. Thus, the plain language of the policy requires that the *actual* subjective intent of Brosseau be considered, which the majority finds irrelevant.

Brosseau stated that Anderson was a "wild" man and that there was no doubt in his mind that the decedent was going to "gut me." Clerk's Papers, at 28. Thus, even if Brosseau intended to shoot the gun, his subjective intent was to protect himself, not to kill Anderson.

This subjective intent analysis comports not only with the plain language of the policy, this court's interpretation of that policy but also with the majority view across the country that an injury resulting from an act committed by an insured in self–defense is not an expected or intended injury within the meaning of an intentional injury clause in a liability insurance policy, and therefore coverage for such injury is not precluded under such a clause. *See generally, e.g.,* Annot., *Acts in Self–Defense as Within Provision of Liability Insurance Policy Expressly Excluding Coverage for Damage or Injury Intended or Expected by Insured,* 34 A.L.R.4th 761 (1984).

## CONCLUSION

Even if Brosseau deliberately fired the shotgun at Anderson, Brosseau's deposition established that the events leading to the shooting were instant and unexpected.

Therefore, a factual issue exists as to whether what occurred here was an accident for which the subject policies provided coverage. This issue should be resolved by the jury. Consequently, the trial court erred in determining this issue as a matter of law and in granting the insurer's motion for summary judgment.

Furthermore, when a person reacts in self–defense his intention is to protect himself. Thus, an injury resulting from an act committed by an insured in self–defense, from the subjective intent of the insured, is not an expected or intended injury to the victim.

I would reverse the summary judgment and remand this case for trial.