**AMCO INSURANCE COMPANY,**
**Appellant,**

v.

**Christopher J. HAHT, Henry Haht, Kathryn Haht, Gary L. Lottman, and Linda K. Lottman, Appellees.**

**No. 91–973.**

Supreme Court of Iowa.

Oct. 21, 1992.

Rehearing Denied Nov. 25, 1992.

**844**

Marsha K. Ternus and Barbara A. Hering of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellant.

Ronald J. Shea of Smith, Grigg, Shea & Klinker, P.C., Primghar, for appellees Christopher J. Haht, Henry Haht, and Kathryn Haht.

Daryl L. Hecht and Dennis R. Ringgenberg of Crary, Huff, Raby, Inkster, Hecht & Sheehan, P.C., Sioux City, for appellees Gary L. Lottman and Linda K. Lottman.

HARRIS, Justice.

An insurer brought this declaratory judgment action to test its contention that there is no coverage for liability in a wrongful death claim. The insured, an eleven-year-old child, deliberately struck another child with a thrown baseball after becoming irritated in a neighborhood game. According to the trial court's findings the insured intended to hurt the second child, but not to cause him bodily injury. The question concerns an exclusion for liability for bodily injury expected or intended by the insured. The district court found that the exclusion did not apply and we agree.

Plaintiff AMCO Insurance Company issued Henry and Kathryn Haht a homeowners insurance policy. The Hahts' son (Chris) was an insured under the policy. Chris reached his eleventh birthday nine days after the neighborhood baseball game in which the incident occurred.

There was ample evidence to support these trial court findings:

On June 9, 1988, Chris, his younger brother Travis, and two neighborhood friends, Matt Lottman and Mike Carrigan, were playing "lob ball," or "workup" in Chris's backyard in Sutherland, Iowa. The game included someone pitching, someone batting, and the others fielding. After about an hour an argument developed (not surprisingly) over who should pitch. Matt, who had been in the field, wanted to pitch. Chris, who was batting, wanted Travis to pitch. Matt threw the baseball at Travis, who was pitching, hitting him in the leg. Some arguments and some pushing and shoving developed, but the game continued. After some period of time, Matt announced that because he could not pitch he was quitting and threw his glove to the ground. Chris, who happened to have the ball, threw it in Matt's direction. The ball struck Matt in the temple and Matt tragically died as a result of the injuries he received.

Matt Lottman's parents (defendants Lottman) have filed a petition ... seeking damages from Chris for the wrongful death of Matt....

AMCO issued [a] homeowners policy ... to Chris's parents [for the period in question]. The Lottmans and Hahts contend the policy covers Chris and his alleged liability for the wrongful death of Matt. AMCO disagrees, contending the actions of Chris were intentional and hence excluded under the following language of the policy:

"**COVERAGE E—Personal Liability and Coverage F—Medical Payments to Others** do not apply to **bodily injury** or **property damage:**

a. which is expected or intended by the **insured;** ...."

The policy defines bodily injury as "bodily harm, sickness or disease, including required care, loss of services and death that results." The policy defines occurrence as "an accident, including exposure to conditions, which results, during the policy period, in: a. **bodily injury;** ...."

I. General principles are not disputed. Where insurance policies "are ambiguous, require interpretation, or are susceptible to two equally proper constructions, the court will adopt the construction most favorable to the insured." *Benzer v. Iowa Mut. Tornado Ins. Ass'n*, 216 N.W.2d 385, 388

(Iowa 1974). This principle of construction is necessary because insurance policies are in the nature of adhesion contracts. *A.Y. McDonald Indus. v. INA*, 475 N.W.2d 607, 619 (Iowa 1991). Additionally, "[a]n insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations or exclusionary clauses in clear and explicit terms." *Benzer*, 216 N.W.2d at 388. Also, "[a] contract of insurance should be interpreted from a viewpoint of an ordinary [lay] person, not a specialist or expert." *Id.* Therefore, "[w]hen words are left undefined in a policy [they will not be given] a technical meaning. Rather [they will be given] their ordinary meaning, one which a reasonable person would understand them to mean." *A.Y. McDonald*, 475 N.W.2d at 619. Lastly, where parties disagree as to the meaning of terms, there is an objective test to determine whether the terms are ambiguous: "Is the language fairly susceptible to two interpretations?" *Id.*

■ II. By its terms the exclusion clause operates to prevent insurance coverage for an insured's personal liability for bodily injury in two situations: (1) where the insured *expected* bodily injury; and (2) where the insured *intended* bodily injury. We first consider AMCO's contention that the exclusion was triggered because Chris expected bodily injury.

We have defined the term "expected," as used in exclusionary clauses of insurance policies. We said the term "denotes that the actor knew or should have known that there was a substantial probability that certain consequences will result from his actions." *Weber v. IMT Ins. Co.*, 462 N.W.2d 283, 287 (Iowa 1990). Substantial probability requires the indicators to be "strong enough to alert a reasonably prudent [person] not only to the possibility of the results occurring but the indications also must be sufficient to forewarn [that person] that the results are highly likely to occur." *Id.*

There is no evidence Chris knew or should have known Matt's death would result from the thrown ball. The tragic consequence here was, by all accounts, entire-ly unexpected. Chris plainly did not intend this tragic injury to Matt.

■ III. The much closer question is presented on AMCO's claim that Chris intended bodily injury to Matt. We, like courts elsewhere, have explored what sort of intent will trigger an intentional injury exclusion. We adhere to the majority view, under which the exclusion is triggered where the insured intended both (1) to do the act which caused the injury, and (2) to cause some kind of bodily injury. *Altena v. United Fire and Casualty Co.*, 422 N.W.2d 485, 488 (Iowa 1988). The intent to cause the injury may be either actual or inferred. *Id.* Intent may be inferred from the nature of the act and the accompanying reasonable foreseeability of harm. *Id.* In addition, "once intent to cause injury is found, it is immaterial that the actual injury caused is of a different character or magnitude than that intended." *Id.*

■ AMCO thinks the facts here qualify for exclusion under our *Altena* holding. Chris and his parents defend against the exclusion clause by contending Chris's intent to "hurt" Matt, a mere matter of playground bickering, did not rise to the level of intent to bodily injure him, as contemplated in *Altena*. It was on this point that Chris prevailed in district court and with the court of appeals majority.

We think Chris's point is well taken. An eleven-year-old boy, animated by an obscure playground snit, lacks the same capacity to formulate an intent to injure that is possessed by an adult, or even a youth of more maturity. In this respect the present case differs from those from other jurisdictions, cited in support of AMCO. *See Pachucki v. Republic Ins. Co.*, 89 Wis.2d 703, 278 N.W.2d 898 (1979) (a youth old enough to be employed in a print shop); *Iowa Kemper Ins. Co. v. Stone*, 269 N.W.2d 885 (Minn.1978) (a sixteen-year-old youth).

Chris and his parents can also rely on a direct defense on the basis of the wording of the policy, which differs from that in *Altena*. The exclusion in *Altena* was addressed to "any act committed by ... the insured with intent to cause personal inju-

ry." *Altena*, 422 N.W.2d at 486. The exclusion involved here is not addressed to the insured's act. Rather, AMCO's exclusion is addressed to "bodily injury . . . intended by the insured." The target of this language is the injury specifically intended by the insured.

We in no way retreat from our holding in *Altena;* we merely hold it does not apply on this policy in these special circumstances. To apply *Altena* here would grossly overemphasize the vague, uncertain meanderings in the mind of an eleven-year-old child involved in a playground spat. The exclusion does not apply and the district court was correct in so holding.

DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.

All Justices concur except SNELL, J., and McGIVERIN, C.J., and SCHULTZ, J., who dissent.

SNELL, Justice (dissenting).

I respectfully dissent.

The majority has reached a result that would not be expected or intended from the language of the insurance policy. In fact, the policy language clearly states an exclusion from coverage that embraces this case.

Coverage E excludes personal liability to others for "bodily injury" expected or intended by the insured. The majority's analysis transforms this exclusion language to "death" expected or intended by the insured. Of course, the tragic death of Matt was not expected or intended by anyone. But to assign this as the reason that exclusionary insurance coverage does not apply subverts the policy principles cited by the majority.

The policy construction should not turn on whether death was expected or intended. "Bodily injury" is defined in the policy itself to include "bodily harm" as well as death. Bodily harm obviously has a broader scope than just the ultimate harm of death. The construction by the majority so narrows the policy exclusion that it would virtually have no application.

In a death case little short of murder would be excluded. If the insured intended to kill but succeeded only in maiming the victim, coverage would apply because the injury was not specifically intended by the assailant. In a less extreme case, the exclusion would not prevent coverage if the assailant intended to break the victim's arm but broke his leg instead. Such an interpretation totally changes the purpose of homeowners insurance covering accidents.

The policy exclusion does not depend on how severe or how tragic were the consequences of the act. The exclusion applies because the trial court found that harm was intended by the insured to another. The principles enunciated in *Altena v. United Fire and Casualty Co.*, 422 N.W.2d 485, 488 (Iowa 1988), apply to deny coverage. An insurer is entitled to rely on them in gauging the risk of its insurance underwriting.

The majority distinguishes this case from *Altena* because the exclusion in the AMCO homeowners policy issued to the Hahts excluded damages for "bodily injury . . . intended by the insured." The majority adopts the view that the exclusion applies only when the insured has the specific intent to cause the type of injury suffered. This test would apply in all cases where the intentional injury exclusion clause in an insurance policy has language similar to the AMCO policy. In *Altena*, we expressly rejected that view in favor of the majority rule, noting our decision in *McAndrews v. Farm Bureau Mutual Insurance Co.*, 349 N.W.2d 117 (Iowa 1984), in which we denied coverage to an insured who injured the victim in self defense under an exclusion for "bodily injury which is either expected or intended from the standpoint of the insured." We did not distinguish the policy language in *McAndrews* when we examined that decision in *Altena*. In fact, in *Altena* we relied extensively on cases that interpreted exclusion clauses with language identical or similar to the AMCO policy. *See Altena*, 422 N.W.2d at 488–89. We cited these decisions from other jurisdictions to support the majority rule that

the intent to act and the intent to cause some kind of bodily injury are sufficient to deny insurance coverage. The language in the AMCO policy does not direct that we now adopt a different view.

In *Pachucki v. Republic Insurance Co.*, 89 Wis.2d 703, 278 N.W.2d 898 (1979), the Supreme Court of Wisconsin denied coverage for the insured's intentional acts under a policy exclusion for "bodily injury ... which is either expected or intended from the standpoint of the insured." The insured struck the victim, injuring his eye, with a "greening pin" which he had projected with a rubber band. The court found that the insured intended to strike the victim's body with the pin and intended to inflict no greater harm than a "sting" to the victim. The Wisconsin court held that recovery must be barred under the intentional tort exclusionary sections of the applicable insurance policies because the insured intended to act and to inflict injury; it was immaterial that the resulting injury was different in character or magnitude from the injury that was intended. *Id.* at 904.

The Supreme Court of Minnesota has examined similar exclusion language in *Iowa Kemper Insurance Co. v. Stone*, 269 N.W.2d 885 (Minn.1978). In that case, the insured intentionally struck the victim with the buckle of his belt which he had wrapped around his hand. The blow caused the victim to suffer from a continuing epileptic condition. The homeowners insurance policy in the name of the insured's father provided that there would be no coverage for "bodily injury ... caused intentionally by or at the direction of the insured." The Supreme Court of Minnesota determined that there would be no coverage. The court stated:

> The "intent" required to exclude coverage is neither the "intent *to act*" nor the "intent to cause the *specific* injury complained of." Rather, it is the "intent to cause bodily injury" even if the actual injury is more severe or of a different nature than the injury intended.

. . . .

> The rule is well-established and well-reasoned, consistent with the reasonable expectations of the parties to the insurance contract and the public policy against "licensing" intentional and unlawful harmful acts. In the instant case, the direct and inferential evidence permits only one conclusion: [the insured] intended to injure [the victim]. The district court's conclusion to that effect was clearly correct; coverage was therefore properly excluded.

*Id.* at 887.

In *Youngwirth v. State Farm Mutual Automobile Insurance Co.*, we set out principles applicable to intent of the parties in insurance contracts.

> A second principle auxiliary to the determination of intent is that the language of insurance contracts must be given its common and ordinary meaning and must be construed as popularly understood. We have said: "... the words, terms, and provisions of insurance contracts, and particularly clauses limiting or excluding liability on the policy, must be given a practical, reasonable and fair interpretation.... Such words must be given their plain, ordinary, and popular meaning and not peculiar or technical meanings."

258 Iowa 974, 978, 140 N.W.2d 881, 884 (1966); *see also Stover v. State Farm Mut. Ins. Co.*, 189 N.W.2d 588, 591 (Iowa 1971); *Hein v. American Family Mut. Ins. Co.*, 166 N.W.2d 363, 366 (Iowa 1969).

The majority has carved out of the policy an exception to the policy exclusion concerning eleven-year-olds injuring someone in a playground argument. Nothing in the policy remotely suggests the creation of this idea. While compassion for parties suffering tragic injuries has a rightful place in law it should not negate the clear meaning of language already fixed by our jurisprudence. An insurer is entitled to have some idea of what it is insuring.

Christopher Haht intended to hit and cause bodily injury to Matt Lottman. The fact that the injury was more severe than Christopher intended is not a consideration

under the principles we adopted in *Altena*. Coverage should be denied.

McGIVERIN, C.J., and SCHULTZ, J., join this dissent.