**AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Appellee,**

v.

**Paula De GROOT, Rodney De Groot, Sandra De Groot, Estate of Megan Joy Kleyer, Mark Kleyer, and Carol Kleyer, Individually and as Administrators of the Estate of Megan Joy Kleyer, Appellants.**

No. 94–1433.

Supreme Court of Iowa.

Feb. 14, 1996.

Charles T. Patterson and John C. Gray of Eidsmoe, Heidman, Redmond, Fredregill, Patterson & Schatz, Sioux City, for appellants Mark Kleyer and Carol Kleyer, individually and as administrators of the Estate of Megan Joy Kleyer.

Michael R. Hellige of Shull, Cosgrove, Hellige & Lundberg, Sioux City, for appellee.

Considered by HARRIS, P.J., and LARSON, LAVORATO, SNELL, and ANDREASEN, JJ.

LARSON, Justice.

This is an appeal from a judgment in which the district court ruled that an insured who fatally struck a baby's head was excluded from coverage under a farm liability policy. The court ruled that as a matter of law the act was "intended" by the insured and coverage was therefore excluded by the terms of the insurance policy. We affirm.

Paula De Groot, a thirteen-year-old babysitter became frustrated and angry when five-month-old Megan Kleyer would not stop crying. Paula hit Megan's head on the floor three times with such force that the child died.

Megan's parents, Mark and Carol Kleyer, sued Paula and her parents for wrongful death. American Family Mutual Insurance Company, as carrier for the De Groots' farm liability policy, filed an answer on their behalf. American Family also filed this declaratory judgment action to determine whether its policy obligated it to defend or indemnify the De Groots.

The policy provided this exclusion:

Intentional injury. We will not pay for damages due to bodily injury or property damage expected or intended from the standpoint of the insured.

The declaratory judgment action filed by American Family was tried to a jury, whose answers to the court's special interrogatories concluded that Paula did not (1) intend to do the acts causing injury to Megan, (2) expect that her acts would cause death, or (3) intend that her acts would cause bodily injury.

American Family moved for a judgment notwithstanding the verdict under Iowa Rule of Civil Procedure 243(b). It argued that intent to cause injury to the child should be inferred as a matter of law because of the nature of Paula's acts and the foreseeability of injury to the child. The court agreed. It set aside the jury's verdict and entered judgment for American Family.

 When reviewing a trial court's judgment notwithstanding the verdict, we view the evidence in the light most favorable to the verdict. *Watson v. Lewis,* 272 N.W.2d 459, 461 (Iowa 1978). Every legitimate inference that can be reasonably made from the evidence is considered, and if reasonable minds can differ on the issue, it is for the jury to decide. *Schiltz v. Cullen–Schiltz & Assocs., Inc.,* 228 N.W.2d 10, 17 (Iowa 1975).

## I. *The Inference of Intent.*

 Intentional-act exclusions have been considered in several of our cases. In *McAndrews v. Farm Bureau Mutual Insurance Co.,* 349 N.W.2d 117 (Iowa 1984), the insured, who was sued for assault and battery, sought coverage under a policy that excluded coverage for "bodily injury or property damage which is either expected or intended from the standpoint of the insured." The insured conceded that he intentionally struck the victim but claimed that it was in self-defense. He argued that the intentional-act exclusion of the policy would not apply because the act was done in self-defense, and the insurance company was obligated to defend. We concluded that the insured's striking of the victim was an act excluded from coverage because it was intentional, even if done in self-defense. *Id.* at 120.

In *Altena v. United Fire and Casualty Co.,* 422 N.W.2d 485 (Iowa 1988), the insured sexually abused a woman who sought a declaration that the insured's liability policy covered the incident. The insurance company relied on its exclusion for any bodily injury "which is expected or intended by the insured" and denied coverage. *Id.* at 486. The victim claimed on appeal that sexual abuse could not be a basis for inferring an intent to injure because sexual abuse could conceivably be established without proof of an intent to injure. She argued that it was not enough that the insured had intended to do the *acts;* the insurance company must also establish that the insured had an actual or subjective intent to *injure* her. The insured testified that he had no such intent. *Id.* at 487.

We held in *Altena* that an intent to cause injury may be inferred by the nature of the act and the accompanying reasonable foreseeability of harm. Once intent to cause injury is established, it is immaterial that the actual injury caused is of a different character or magnitude than that intended. We held that coverage was excluded by the policy. *Id.* at 488.

In *AMCO Insurance Co. v. Haht,* 490 N.W.2d 843 (Iowa 1992), we reached a different result. We concluded that, despite an exclusion for "bodily injury ... intended by the insured," there was coverage for an eleven-year-old child who deliberately struck another child with a baseball after becoming irritated in a neighborhood baseball game. We did so, distinguishing *Altena,* on the ground that the nature of the acts and the policy language were different.

In *American Family Mutual Insurance Co. v. Wubbena,* 496 N.W.2d 783 (Iowa App. 1992), three boys aged twelve to fifteen were playing with BB guns. One of the boys became angry and said "I'm going to get you." He took a BB gun from another of the youths and shot twice at the victim who was hiding behind a tree. On the second shot, he struck the victim in the eye.

In the *Wubbena* case, the court of appeals discussed both *AMCO* and *Altena.* It concluded that the "expected or intended by any

insured" language was applicable and would preclude recovery:

> Here, we have a fifteen-year-old boy with a [BB] gun in hand who shot twice at the victim. There can be little, if any, question that he intended to do the act which he committed. We must next determine whether he intended to cause some kind of bodily injury. Again applying the principles of *Altena,* we believe that it can be inferred as a matter of law that when a person shoots a [BB] gun at another, there is the intent to cause bodily injury. Some harm is inherent in and inevitably results from such an act. The character of the act of pointing a [BB] gun at another is such that physical harm can be foreseen as accompanying it.

*Wubbena,* 496 N.W.2d at 785.

Understandably, the claimants in the present case rely heavily on the *AMCO* case. However, we made it clear in *AMCO* that that case was distinguishable from *Altena.* We said that:

> We in no way retreat from our holding in *Altena;* we merely hold it does not apply on this policy in these special circumstances. To apply *Altena* here would grossly overemphasize the vague, uncertain meanderings in the mind of an eleven-year-old child involved in a playground spat. The exclusion does not apply and the district court was correct in so holding.

*AMCO,* 490 N.W.2d at 846.

We believe the present case aligns more closely with *Altena, McAndrews,* and *Wubbena* than it does with *AMCO.* In *AMCO,* the act consisted of a single throw of a baseball, while in the present case the acts consisted of three separate blows of the child's head against the floor. Expert testimony at the trial established the force to be in excess of that which would have been received in a forty-five-foot fall. As we noted in *Altena,* the repetitious nature of the acts supports an inference of an intent to injure. *Altena,* 422 N.W.2d at 490. Under the facts of the present case, we believe the inference of intent to cause injury is stronger than that in *AMCO* and mandates an inference of intent to injure.

## II. *The Wording of the Exclusion.*

The claimants have an alternative argument: that there is a distinction in the language of this exclusion, which applies to "any" person, while the language in other policies provided an exclusion for acts intended by *the* insured. They argue that this introduces an objective standard for evaluating intent and makes it more difficult to resolve the issue as a matter of law. Even if we agreed that this establishes an objective test for intent, it would not help these claimants' case. The inference of intent, we believe, would be even stronger under an objective test.

The claimants also challenge several evidentiary rulings by the trial court. Because we find as a matter of law that the policy did not provide coverage, we need not address the evidentiary questions.

**AFFIRMED.**