**PEKIN INSURANCE COMPANY, Plaintiff–Appellant,**

v.

**AUTO–OWNERS INSURANCE COMPANY, Defendant–Appellee.**

No. 00–1007.

Court of Appeals of Iowa.

April 11, 2001.

---

2. Iowa Code section 902.9(3) (1997) is now found at section 902.9(4) (2001).

Joseph M. Barron, John M. Wharton, Peddicord, Wharton, Spencer & Hook, P.C., Des Moines, for appellant.

Jason T. Madden, Mark L. Tripp, Mark A. Teigland, Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellee.

Heard by HUITINK, P.J., and VOGEL and MAHAN, JJ.

MAHAN, Judge.

Plaintiff insurance carrier appeals following the grant of summary judgment for the defendant insurance carrier on plaintiff's declaratory judgment action. Plaintiff contends the court erroneously inferred the defendant's insured intentionally caused the accident in question, thereby barring automobile insurance coverage pursuant to the policy's intentional act exclusion. We reverse and remand.

**Background Facts and Proceedings.** Pekin Insurance Company (Pekin) provided automobile liability insurance coverage, including uninsured motorist and underinsured motorist coverage, to Brent Buckingham. Auto–Owners Insurance Company (Auto–Owners) provided automobile liability insurance coverage to Dennis Vinson.

On April 8, 1994, Vinson was following a vehicle driven by Buckingham. While en route to their destination, Vinson began an impromptu game of "bump and run." During this game, the trailing vehicle drives as close as it can to the lead vehicle, at highway speeds, to the point where the two vehicles actually make contact. Vinson and Buckingham had played impromptu games of "bump and run" on three or four previous occasions. Both men had served as the "trailing" vehicle that would start the game. Any contact between vehicles had not resulted in personal injury or property damage. On this occasion, however, Vinson's vehicle struck Buckingham's vehicle as Buckingham was slowing down to make a turn. Vinson was traveling at approximately fifty to fifty-five miles per hour when the vehicles made contact. Buckingham lost control of his vehicle,

went off the shoulder of the road, and was injured. As a result of the incident, Vinson received a citation for following too closely.

Auto–Owners denied coverage to Vinson on the basis of the intentional act exclusion contained in its liability policy.[1] Pekin provided coverage to Buckingham on the basis of its uninsured motorist coverage. Vinson assigned his claim against Auto–Owners to Buckingham and Pekin. Pekin filed a declaratory judgment action against Auto–Owners to recover amounts paid by Pekin to its insured, Buckingham, pursuant to his uninsured motorist coverage. Pekin sought a determination Vinson did not intentionally injure Buckingham and therefore the insurance policy issued by Auto–Owners to Vinson provided coverage for the accident.

The parties filed cross-motions for summary judgment, raising the intentional act exclusion issue. The district court concluded Vinson had no actual intent to injure Buckingham, but his intent to injure could be inferred from the totality of circumstances surrounding the accident. The court found it "reasonably foreseeable that striking a moving vehicle at a high rate of speed will result in that vehicle leaving the roadway and bodily injury to its occupants." It denied Pekin's motion for summary judgment, granted Auto–Owner's motion for summary judgment, and dismissed Pekin's petition. Pekin appeals.

**Standard of Review.** We review a summary judgment ruling for errors at law. Iowa R.App.P. 4; *St. Ansgar Mills, Inc. v. Streit*, 613 N.W.2d 289, 292 (Iowa 2000). Summary judgment is appropriate where the moving party shows no genuine issue of material fact exists and

---

**1.** The exclusion provided: "Liability Coverage does not apply: 1. To any person who inten-

tionally causes bodily injury or property damage."

it is entitled to judgment as a matter of law. Iowa R.Civ.P. 237(c); *Swartzendruber v. Schimmel*, 613 N.W.2d 646, 649 (Iowa 2000). We examine the record before the district court to determine whether any genuine issue of material fact exists and whether the court correctly applied the law. *Schoff v. Combined Ins. Co. of America*, 604 N.W.2d 43, 45 (Iowa 1999).

■■■ **Intentional Act Exclusion.** An intentional act exclusion bars coverage if the insured intended both (1) to do the act which caused the injury, and (2) to cause some kind of bodily injury. *Allied Mut. Ins. Co. v. Costello*, 557 N.W.2d 284, 286 (Iowa 1996) (quoting *AMCO Ins. Co. v. Haht*, 490 N.W.2d 843, 845 (Iowa 1992)). The burden of establishing an exclusion rests upon the insurer. *Id.* The parties agree Vinson intended to "bump" Buckingham's vehicle on the date of the accident, thereby satisfying the first part of the test. The parties, however, dispute whether Vinson intended to cause some kind of bodily injury.

■■■ The intent to cause the injury may be either actual or inferred. *American Family Mut. Ins. Co. v. Wubbena*, 496 N.W.2d 783, 784 (Iowa Ct.App.1992) (quoting *Haht*, 490 N.W.2d at 845). Intent may be inferred from the nature of the act and the accompanying reasonable foreseeability of harm. *Id.* Once intent to cause injury is established, it is immaterial the actual injury caused is of a different character or magnitude than that intended. *American Family Mut. Ins. Co. v. DeGroot*, 543 N.W.2d 870, 871 (Iowa 1996).

■■■ The district court concluded, "Even though Vinson had no actual intent to injure Buckingham, his intent to injure should be inferred from the totality of circumstances surrounding this unfortunate incident." We disagree with the district court's inference of intent in this case, where no actual intent to injure exists.

The case before us differs from Iowa cases in which the court has inferred intent to injure, thus triggering an intentional act exclusion. Those cases dealt with actions prompted by anger, frustration, or non-consensual activity, none of which is present here. *See Costello*, 557 N.W.2d at 285 (insured lost his temper during a dispute and assaulted his secretary); *DeGroot*, 543 N.W.2d at 870 (frustrated and angry thirteen-year-old babysitter hit child's head on the floor three times); *Altena v. United Fire and Cas. Co.*, 422 N.W.2d 485, 485–86 (Iowa 1988) (insured committed repeated non-consensual sex acts upon the victim); *Wubbena*, 496 N.W.2d at 783 (angry fifteen-year old shot BB gun twice at another boy). Vinson and Buckingham were friends. Vinson intended merely to bump Buckingham's vehicle. Previous games of "bump and run" between the two had not resulted in injury, thus decreasing the foreseeability of harm.

We believe two cases from other jurisdictions more closely resemble the facts before us. In *Morrill v. Gallagher*, 370 Mich. 578, 122 N.W.2d 687 (1963), defendants threw a firecracker into a room in which plaintiff was working, to frighten him. *Id.* at 688. The result was more serious than anticipated, causing injury to plaintiff. *Id.* Defendant's policy excluded from coverage injury "caused intentionally by or at the direction of the insured." *Id.* at 689. The court concluded the exclusion did not bar coverage:

> Some emphasis is placed on [the intentional injury exclusion] on the ground that in the instant case the firecracker was thrown intentionally. Unquestionably such was the case, but it will be noted that under the language of the excluding clause the injury must be caused "intentionally." There is nothing

in this case to justify a conclusion that either Gallagher or Canfield intended to cause any physical harm to plaintiff. The language of the policy is binding on appellant, and if ambiguous it must be construed against appellant's claims in the instant controversy. It may not be interpreted as barring liability under the policy.

*Id.* at 691.

A similar set of facts, but a different outcome, is found in *Pachucki v. Republic Ins. Co.*, 89 Wis.2d 703, 278 N.W.2d 898 (1979). In *Pachucki*, defendants entered the room where Pachucki, a co-employee, was working and started a "greening pin war," an activity comparable to shooting paper clips with rubber bands. *Id.* at 899. On a previous occasion, one of the defendants suffered an injury and bled after being struck with a greening pin. *Id.* at 903. This particular "war" game began spontaneously, and was not the result of any provocation or animosity. *Id.* at 900. Defendants intended only to "sting" Pachucki. *Id.* at 903. Pachucki and defendants all fired greening pins during the game. *Id.* at 900. A greening pin struck Pachucki in the right eye, causing an injury to his cornea. *Id.* at 899.

Defendants' policy excluded coverage for bodily injury "which is either expected or intended from the standpoint of the insured." *Id.* at 900. The court held the exclusion applied to bar coverage. *Id.* at 904. It distinguished the case from *Morrill:*

> Some courts might characterize the defendants' conduct in this case as "horseplay" as there was no specific intent to do harm. However, the boys' actual knowledge based upon prior experience that a greening pin will cause harm

when it strikes, especially when fired at the close range of six feet, distinguishes this case from the classic "horseplay" case of [*Morrill*].... In *Morrill* the remote possibility of harm cannot be equated with the substantial certainty that harm would result under the facts of this case.

*Id.* at 903.

Here, as in *Pachucki*, the parties had engaged in "bump and run" on previous occasions. Similarly, Vinson began the "bump and run" game spontaneously, not out of provocation or animosity. In contrast to *Pachucki*, however, Vinson and Buckingham had no "actual knowledge based upon prior experience" that harm would result from playing "bump and run." *See Pachucki*, 278 N.W.2d at 903. Unlike *Pachucki*, neither Vinson nor Buckingham suffered injuries during previous games of "bump and run." Thus, the case before us more closely resembles *Morrill*, because "there is nothing in this case to justify a conclusion that [Vinson] intended to cause any physical harm to [Buckingham]." *See Morrill*, 122 N.W.2d at 691. We will not infer intent in this situation, where the record clearly shows no actual intent existed. To do so, based upon the record on appeal, would result in an unnecessary expansion of the intentional injury exclusion. We reverse the judgment of the district court and remand for further proceedings consistent with this decision.

**REVERSED AND REMANDED.**