# IN THE SUPREME COURT OF IOWA

No. 18–1550

Filed June 5, 2020

**T.H.E. INSURANCE COMPANY,**

   Appellee,

vs.

STUART R. GLEN,

   Defendant,

and

**ESTATE OF STEPHEN PAUL BOOHER; GLADYS F. BOOHER,** as
Administrator; and **GLADYS F. BOOHER,** Individually,

   Appellants.

---

Appeal from the Iowa District Court for Polk County, Jeanie Kunkle Vaudt, Judge.

Appellants appeal the district court's grant of summary judgment to an insurer in a declaratory judgment action relating to insurance coverage. **REVERSED AND REMANDED.**

Fred L. Dorr of Wasker, Dorr, Wimmer & Marcouiller, P.C., West Des Moines, Brian P. Galligan of Galligan & Reid, P.C., Des Moines, and Nick C. Rowley of Trial Lawyers for Justice, Decorah, for appellants.

John F. Lorentzen and Thomas C. Goodhue of Nyemaster Goode, P.C., Des Moines, for appellee.

**APPEL, Justice.**

This case involves a question of whether a commercial general liability policy and a related excess liability declaration cover claims brought by the estate and spouse of an employee who was fatally injured while an employee of Adventureland Amusement Park, located in Altoona.

Booher was serving as a loading assistant on the Raging River ride at the time he suffered his injuries. Booher's estate and his widow filed an action in district court, later removed to federal court on diversity grounds, which alleged that the injuries to Booher were a result of multiple grossly negligent acts by the ride's operator, Adventureland employee Stuart Glen.

In response, the insurer filed a declaratory action in state court seeking a declaration that the insurer had no duty to defend or indemnify the coemployee in the underlying federal action. The Booher plaintiffs filed a mirror image declaratory counterclaim. The federal court stayed the proceeding diversity action pending resolution of the declaratory action in state court.

The parties in the state declaratory action filed cross-motions for summary judgment. The district court originally denied both parties' motions. On reconsideration, however, the district court reversed course and held that the insurer was entitled to summary judgment. The plaintiff appeals.

For the following reasons, we affirm in part and reverse in part the judgment of the district court.

### I. Factual and Procedural Background.

### A. Underlying Lawsuit.

1. *The parties.* The plaintiffs alleged that Stephen Booher was a seasonal employee at Adventureland who had been recently employed as

a loading assistant on the Raging River ride. This is a water ride where the passengers are in rafts on conveyor belts that proceed along an ersatz river. Plaintiffs alleged that defendant Stuart Glen was an employee of Adventureland who served as ride operator of the Raging River on the date of the incident.

2. *Nature of the incident.* On June 7, 2016, Booher allegedly suffered fatal injuries when he and another coworker were jerked off their feet and fell onto the moving belt that created the ride action. Booher was drawn into the vortex between one of the rafts and a concrete sidewall. Booher's head was repeatedly rammed into the sidewall until the ride operator, defendant Stuart Glen, finally stopped the ride. Booher ultimately died of his injuries four days later on June 11.

3. *Alleged acts and omissions of Glen.* Plaintiffs claimed that the gross negligence of Glen, the ride operator, was a proximate cause of the death of Booher and the damages to his estate and spouse. The plaintiffs alleged fifteen acts in support of its claim that Glen was grossly negligent.

Some of the allegations include Glen's acts and omissions that allegedly occurred before the ride started: failure to check the ride before starting it, failure to assure himself that the ride assistants were not standing on any boat prior to starting the ride, and starting the ride without first obtaining the thumbs up signal from the loading assistants as required by prominently displayed instructions on the ride control board located directly in front of the ride operator. The plaintiffs also claimed that Glen admitted that he caused the assistant to topple onto the ride's exposed conveyor belts.

Other allegations appear to focus on acts and omissions that occurred after the ride was started: failure to watch the ride for the entirety of its operation; failure to stop the ride once he became aware of the

incident due to his reckless, unexpected, wanton, and premature ride start; leaving the operator's station within the clear visual range of the fallen loading assistants without shutting down the ride; failure to engage the oversized red "E-Stop Aux" knob located immediately in front of him after he became aware that the loading assistants were down and the ride was still running; failure to key the ride to the off position after becoming aware that the loading assistants had been jerked off their feet due to the premature start of the ride; failure to stop the ride and leaving his station, although he could easily observe that Booher had been knocked down and his head and body were brought into continuous contact with that sidewall; stopping the ride only after several ride patrons repeatedly yelled at him to "stop the ride"; and failure to consider Booher's injury, once he was knocked down, as serious.

Finally, several allegations do not have an explicit temporal component. For example, the petition claimed Glen's gross negligence arose from his failure to be on guard and his failure to understand his role in responding to the incident.

4. *Damages.* Booher's estate and his surviving spouse sought six categories of damages. Specifically, they sought to recover damages arising from loss of future earning capacity; physical and mental pain and suffering; loss of spousal consortium, both before and after Booher's death; loss of parental consortium for Booher's children; Booher's reasonable burial expense; and punitive damages.

5. *Removal of underlying tort action.* The defendants in the underlying tort action removed the case to federal court on grounds of complete diversity. T.H.E. then filed a state court declaratory judgment action against the plaintiffs. The federal court stayed proceedings pending resolution of the state court declaratory action.

**B. State Court Declaratory Action.** In the state court declaratory action, T.H.E. alleged that Adventure Lands, Inc. was its named insured under a Comprehensive General Liability (CGL) policy and commercial excess liability policy. T.H.E. alleged that a gross negligence claim, like that alleged by the plaintiffs, was inconsistent with the definitions of "accident" and "expected" in the CGL policy and fall outside the scope of coverage. The Booher plaintiffs responded by denying the allegations of T.H.E. in the declaratory action, alleging affirmative defenses, and filing a declaratory action of their own, asserting that T.H.E. had a duty to defend and indemnify Adventureland against the Boohers' claims under T.H.E.'s CGL policy and under its excess coverage policy.

The parties filed cross-motions for summary judgment. The district court originally entered an order denying both motions. It reasoned that whether there is coverage under the applicable insurance policies presented genuine issues of material fact precluding summary judgment.

T.H.E. filed a motion to reconsider. T.H.E. argued that determining whether there is a duty to defend under insurance policies does not require resolution of underlying facts but instead raises a question of law based on the pleadings. According to T.H.E., the issue to be resolved was whether a claim of gross negligence is inconsistent with the coverage provisions of the applicable policy. The Booher plaintiffs agreed, asserting that the motion and cross-motions in the state declaratory judgment actions raised a question of law.

The district court reconsidered its prior order and granted T.H.E.'s motion for summary judgment. In the new summary judgment order, the district court vacated its prior order, granted T.H.E.'s motion for summary judgment, and denied summary judgment to the Booher plaintiffs.

The district court first examined the nature of the Booher plaintiffs' claim. The district court noted that under Iowa Code section 85.20(2) (2015), the Booher plaintiffs do not have a claim against a coemployee for ordinary negligence but only for "gross negligence amounting to such lack of care as to amount to wanton neglect for the safety of another."

In this case, according to the district court, the Boohers' claim of gross negligence arose from Glen's conduct after Stephen Booher fell into the ride. At that point, according to the district court, Glen, knowing Stephen had fallen into the ride, left his station and failed to key the ride off until several ride patrons repeatedly yelled at him to stop the ride. According to the district court, the Boohers allege that Glen's conduct ripened into gross negligence because his failure to stop the ride after Stephen had fallen into it "was the result of conscious indifference to the rights, welfare and safety of [Stephen]." The district court characterized the Boohers as claiming that once Stephen had fallen into the ride, Glen had a duty to prevent further injury to Stephen. The district court then proceeded to consider whether the Boohers' gross negligence claim was arguably or potentially covered under the applicable policies.

The district court reasoned that the Boohers' claim of gross negligence was not covered under the CGL policy. The district court noted that under the CGL policy, "bodily injury" must arise from an "occurrence." Under the CGL policy, an "occurrence" is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Applying caselaw, the district court reasoned, an "accident" is an "unexpected and unintended 'occurrence.'" But the injuries that occurred after Glen realized he had fallen in were not unexpected and unintended but were the natural and expected result of Glen's conscious action in not stopping the ride. As a result, there was no

coverage under the CGL policy because the Boohers' gross negligence claim was not an "accident" and therefore not an "occurrence" under the policy. Using similar reasoning, the district court also held that there was no coverage of the Boohers' claim under an exclusion in the policy that provided that injury that is expected or intended from the standpoint of the insured is excluded from coverage.

The district court considered whether the Boohers' claim for consequential damages such as loss of consortium, lost earning capacity, medical expenses, and punitive damages were covered under the policy. The district court found no coverage. Although the CGL policy covered damages for "care, loss of services, or death," the district court reasoned that such damages in this case were not covered because there was no "accident" or "occurrence" under the policy.

**II. Standard of Review.**

This case involves an appeal of the district court's order on cross-motions for summary judgment. Iowa R. App. P. 6.907.

**III. Overview.**

**A. Introduction.** This question of whether there is coverage for the Booher plaintiffs' gross negligence claim has two separate aspects. The first issue is whether the gross negligence claim brought by the Booher plaintiffs is covered under section I of the CGL policy. The central question here is whether a claim of gross negligence is incompatible or inconsistent with the coverage provisions and exclusions of section I.[1]

---

[1]There is a question of whether the Booher plaintiffs have preserved the argument that their gross negligence claim is covered by section I of the CGL policy. Clearly, the district court decided this question adversely to Booher. On appeal, however, the Boohers primarily focus on their assertion that section II of the CGL policy provides coverage. The Booher plaintiffs do claim on appeal, however, that the district court's determination that the terms "accident" and "occurrence" in section I were incompatible with a gross negligence claim was "inaccurate," that gross negligence is not intentional, and that the concept of "expected" injury does not provide an excuse to avoid coverage. Further, T.H.E.

Aside from coverage under section I, a second question is whether the provisions of section II of the CGL give rise to coverage of the Booher plaintiffs' gross negligence claim. Even if section I does not give rise to coverage, the Booher plaintiffs claim that section II does and, to the extent section II is inconsistent with section I, the more expansive provisions of section II prevail.

**B. Provisions of Relevant Insurance Policies.**

1. *CGL policy.* The commercial general liability policy (CGL) involved in this case provides coverage for insureds, including for Glen. Key coverage provisions are provided in section I, section II, and section V.

Section I is entitled "**COVERAGES**." Section I includes coverage provisions as follows: **COVERAGE A—BODILY INJURY AND PROPERTY DAMAGE LIABILITY; COVERAGE B—PERSONAL AND ADVERTISING INJURY LIABILITY; COVERAGE C—MEDICAL PAYMENTS AND SUPPLEMENTAL PAYMENTS—COVERAGES A AND B.**

Under section I(1)(a) of the policy, the insurer agrees to pay sums "because of 'bodily injury' . . . to which this insurance applies." Section I(1)(a) further provides that "we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' . . . to which this insurance does not apply."

Under section I(1)(b), the insurance applies only to "bodily injury" if it is caused by an "occurrence." Section I(1)(e) provides that damages because of "bodily injury" include "damages claimed by any person or organization for care, loss of services or death resulting any time from 'bodily injury.' "

---

fully briefed the section I argument in its responsive brief on appeal and does not suggest that it would be inappropriate for us to address the section I argument. Under the circumstances, we conclude that we may address the section I argument.

Section I also contains exclusions from coverage. Specifically, section I(2)(a) excludes " '[b]odily injury' . . . expected or intended from the standpoint of the insured."

Section II is entitled "**WHO IS AN INSURED**." Section II(2)(a) declares that employees are insureds but "only for acts within the scope of their employment by you or while performing duties related to the conduct of your business." Section II(2)(a)(1) further provides that "none of these 'employees' . . . are insureds for: '[b]odily injury' or 'personal and advertising injury.' "

Section V is entitled "**DEFINITIONS**." There are two definitions that have a bearing on the case at hand. Section V(3) provides, " 'Bodily injury' means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Section V(13) provides, " 'Occurrence' means an accident, including continuous or repeated exposure to substantially the same harmful conditions."

2. *Multi-Plex endorsement.* There is a Multi-Plex Liability Endorsement (MPE) that modifies insurance provided under the CGL policy. The MPE notes that coverage under the CGL is "amended as follows." The MPE notes that coverage under the CGL is "amended as follows:" and is followed by a header stating, "**Employee v. Employee Bodily Injury Liability—Additional Coverage**," under which it declares that section II(2)(a)(1) is modified to eliminate the exclusion of "Bodily Injury."

3. *Excess coverage.* There is also an excess coverage policy, which T.H.E. admits " 'follows form' with the CGL Coverage, and both provide liability coverage for the same types of claims." The excess policy states in relevant part,

The insurance provided under this Coverage Part will follow the same provisions, exclusions, and limitations that are contained in the applicable "controlling underlying insurance," unless otherwise directed by this insurance. To the extent such provisions differ or conflict, the provisions of this Coverage Part will apply. However, the coverage provided under this Coverage Part will not be broader than that provided by the applicable "controlling underlying insurance." There may be more than one "controlling underlying insurance" listed in the Declarations and provisions in those policies conflict, and which are not superseded by the provisions of this Coverage Part. In such a case, the provisions, exclusions and limitations of the "controlling underlying insurance" applicable to the particular "event" for which a claim is made or suit is brought will apply.

## C. Positions of the Parties.

1. *The Booher plaintiffs.* On appeal, the Boohers argue that the trial court failed to recognize the import of language in section II of the CGL policy. According to the Booher plaintiffs, section II of the CGL policy provides that Glen was an insured "for acts within the scope of [his] employment." The Boohers argue that Glen was certainly acting within the scope of his employment when the incident occurred.

Under section II, according to the Boohers, T.H.E. promised to provide coverage for all acts within the scope of employment of employees except for personal or advertising injury to coemployees, similar injuries to family members, and several other irrelevant categories. The Boohers characterize section II as creating coverage for "general employment acts." There is no applicable exclusion under section II prohibiting recovery of relational damages such as loss of spousal and adult child consortium sought by the Boohers.

The Boohers cite the MPE modifying section II as evidence that section II is a coverage issue. The MPE eliminated a bodily injury exclusion from section II. T.H.E. characterized the modification as providing "additional coverage."

The Boohers seem to recognize that their interpretation of section II of the CGL policy may be viewed as inconsistent with the coverage and exclusion language of section I. Any ambiguity, according to the Boohers, should be construed in favor of coverage.

On appeal, the Boohers address the question of whether they have sufficiently alleged gross negligence under Iowa Code section 85.20. The Boohers assert, consistent with our caselaw, that gross negligence is established when the following elements are met: "1. Knowledge of the peril to be apprehended; 2. Knowledge that injury is a probable, as opposed to a possible, result of the danger; and 3. A conscious failure to avoid the peril." *Swanson v. McGraw*, 447 N.W.2d 541, 543 (Iowa 1989) (en banc).

The Boohers contend that the record supports a gross negligence claim. They claim that the combination of events—prematurely starting the ride in violation of park rules, seeing that a fellow employee was down with injuries considered serious, park patrons yelling at him to shut off the ride, and ignoring all of that while leaving the ride in operation— constitute gross negligence.

Finally, the Boohers attack the district court's conclusion that the policies cover "bodily injury" caused by an "accident" and are thus incompatible with coverage for a claim of gross negligence under Iowa Code section 85.20. According to the Boohers, gross negligence is "lack of care as to amount to wanton neglect for the safety of another." The Boohers note that under *Swanson*, we observed " '[W]anton' conduct lies somewhere between the mere unreasonable risk of harm in ordinary negligence and intent to harm." *Id.* at 543 (alteration in original) (quoting *Thompson v. Bohlken*, 312 N.W.2d 501, 504 (Iowa 1981) (en banc)). As a result, the Boohers assert that gross negligence is "decidedly different" than an intentional act. The Boohers also claim that the "expected" injury

definition does not provide T.H.E. with an excuse to avoid coverage. Further, the Boohers suggest that whether the event and resulting harm were "expected or intended from the standpoint of the insured" was a question for the jury. *Nat'l Sur. Corp. v. Westlake Inv., LLC*, 880 N.W.2d 724, 735 (Iowa 2016). The Boohers further claim that there is no exception to coverage under section II of the policy.

2. *T.H.E.* The argument of T.H.E. on appeal follows the reasoning of the district court. According to T.H.E., the CGL policy covers "bodily injury," the term "bodily injury" requires an "occurrence," the term "occurrence" requires an "accident," and allegations that Glen was grossly negligent under Iowa Code section 85.20(2) require an intended or expected act that is inconsistent with an "accident." As a result, there is no coverage for the acts of gross negligence alleged by Boohers. Further, like the district court, T.H.E. notes that there is an explicit understanding from the term "bodily injury" that is "expected or intended from the standpoint of the insured."

T.H.E. next addresses the Boohers' argument that coverage for the gross negligence claim may be found in section II of the CGL policy. According to T.H.E., section II defines who is an "insured" but does not define covered risks. T.H.E. asserts that section I provides for coverage for " 'bodily injury' . . . to which this insurance applies." Under the immediate antecedent rule, the term "to which this insurance applies" modifies the nearest term "bodily injury" and not the more distant term "damages."

**IV. Discussion.**

**A. Introduction.** The principles of interpretation and construction of insurance contracts are well established. Generally speaking, the plain meaning of the insurance contract prevails. *See Thomas v. Progressive Cas. Ins.*, 749 N.W.2d 678, 682 (Iowa 2008). An insurance contract,

however, is to be interpreted from the standpoint of an ordinary person, not a specialist or expert. *See Witcraft v. Sundstrand Health & Disability Grp. Benefit Plan*, 420 N.W.2d 785, 790 (Iowa 1988).

Because insurance policies are adhesive contracts, we construe provisions in the light most favorable to the insured. *See, e.g., A.Y. McDonald Indus., Inc. v. Ins. Co. of N. Am.*, 475 N.W.2d 607, 619 (Iowa 1991) (en banc); *Cairns v. Grinnell Mut. Reins.*, 398 N.W.2d 821, 824 (Iowa 1987). Ambiguities in an insurance contract are interpreted against the insurer. *See Boelman v Grinnell Mut. Reins.*, 826 N.W.2d 494, 502 (Iowa 2013). But the rule regarding ambiguities does not come into play unless there is a real ambiguity in the terms of the policy. *Randolph v. Fireman's Fund Ins.*, 255 Iowa 943, 945, 124 N.W.2d 528, 529 (1963). A mere disagreement between the parties does not establish ambiguity. *N. Star Mut. Ins. v. Holty*, 402 N.W.2d 452, 454 (Iowa 1987). Only when policy language is subject to two reasonable interpretations do we find ambiguity. *Kibbee v. State Farm Fire & Cas. Co.*, 525 N.W.2d 866, 868 (Iowa 1994); *see generally Boelman*, 826 N.W.2d at 501–02 (discussing the legal standards for interpreting insurance policies, including what constitutes ambiguity).

**B. Coverage Under Section I.** We first address the question of whether there is coverage for Glen as an insured under section I of the CGL policy. The question here is whether an act of gross negligence could potentially be within the scope of "accident" as that term is used in the CGL policy. *See McAndrews v. Farm Bureau Mut. Ins.*, 349 N.W.2d 117, 119 (Iowa 1984) (en banc) (noting the question of coverage turns on potential or possible liability under facts alleged). Or, put differently, does the requirement in section I that the injury arise out of an "accident"

foreclose the possibility of coverage for any claim that arises to "gross negligence" as the term is used in Iowa Code section 85.20?

We begin first with a discussion of coverage under section I(A) of the policy. In order to be covered, the injury must arise from an "occurrence." Section V(13) defines "occurrence" as "an accident." The phrase "an accident" is not defined, but under our caselaw, an accident is "an unexpected and unintended 'occurrence' so long as the insured does not expect or intend both it *and* some injury." *First Newton Nat'l Bank v. Gen. Cas. Co. of Wis.*, 426 N.W.2d 618, 625 (Iowa 1988); *see also Westlake Inv., LLC*, 880 N.W.2d at 734–35 (discussing usage and meaning of the terms occurrence and accident within the context of jury instructions, and within the meaning of modern and past CGL policies); *United Fire & Cas. Co. v. Shelly Funeral Home, Inc.*, 642 N.W.2d 648, 652 (Iowa 2002) (finding that, within the context of an insurance policy, "[t]he term 'occurrence' is defined to mean 'an accident, including continuous or repeated exposure to substantially the same general harmful conditions.' "). Our approach to the meaning of the term "accident" is consistent with the exclusion of section I(2)(a), which excludes from coverage " '[b]odily injury' . . . expected or intended from the standpoint of the insured."

We considered the meaning of the term "expected" in the context of an insurance contract in *Weber v. IMT Insurance*, 462 N.W.2d 283, 287 (Iowa 1990). In *Weber*, we noted that the term "expected" in an exclusionary clause of an insurance company "denotes that the actor knew or should have known that there was a substantial probability that certain consequences will result from his actions." *Id.* at 287 (quoting *City of Carter Lake v. Aetna Cas. & Sur. Co.*, 604 F.2d 1052, 1058–59 (8th Cir 1979)). *Weber* went on to explain,

> In defining substantial probability, . . . "[t]he indications must be strong enough to alert a reasonably prudent man not only to the possibility of the results occurring but the indications also must be sufficient to forewarn him that the results are highly likely to occur."

*Id.* at 287 (alteration in original) (quoting *City of Carter Lake*, 604 F.2d at 1059 n.4). Subsequent caselaw has similarly upheld the proposition expounded in *Weber*. By way of example, in *Amco Insurance v. Haht*, an eleven-year-old boy intentionally struck another child with a baseball, which led to the child's death. 490 N.W.2d 843, 844 (Iowa 1992) (en banc). As there was no evidence the boy knew, or should have known, that the baseball striking the other child would lead to their death, it was therefore not expected harm. *Id.* at 845.

The term "substantial probability" is an elastic term that can mean different things. In the context of an insurance exclusion, it means "highly likely" or "substantially certain" to occur. *See, e.g., Wickman v. Nw. Nat'l Ins.*, 908 F.2d 1077, 1089 (1st Cir. 1990) (" '[S]ubstantially likely to occur' is an equivalent, if not tougher, standard to 'highly likely to occur.' "); *City of Carter Lake*, 604 F.2d at 1058–59 ("For the purposes of an exclusionary clause in an insurance policy the word 'expected' denotes that the actor knew or should have known that there was a substantial probability that certain consequences will result from his actions."); *Ohio Cas. Ins. v. Henderson*, 939 P.2d 1337, 1345 (Ariz. 1997) (in banc) (finding an injury is "expected" if it is "substantially certain" to occur); *Shell Oil Co. v. Winterthur Swiss Ins.*, 15 Cal. Rptr. 2d 815, 835 (Ct. App. 1993) ("The ordinary and popular meaning of 'expect' connotes subjective knowledge of or belief in an event's probability. We see no material difference if the degree of that probability is expressed as substantially certain, practically certain, highly likely, or highly probable; the terms are minor shadings of the same idea. . . . [This] convey[s] . . . that we do not think of events we

'expect' as absolute certainties."); *Ind. Farmers Mut. Ins. v. Ellison*, 679 N.E.2d 1378, 1382 (Ind. App. 1997) (construing substantial probability as "consciously aware that the injury [is] practically certain to result") (quoting *Ind. Farmers Mut. Ins. v. Graham*, 537 N.E.2d 510, 512 (Ind. App. 1989))).

We now turn to consider the meaning of the term "gross negligence" under Iowa Code section 85.20.  A key case is *Thompson*, 312 N.W.2d 501. In *Thompson*, we declared that in order to show gross negligence under Iowa Code section 85.20(2) (1977), a plaintiff must show three elements: "(1) knowledge of the peril to be apprehended; (2) knowledge that injury is a probable, as opposed to a possible, result of the danger; and (3) a conscious failure to avoid the peril."  *Id.* at 505.

Under Iowa Code section 85.20, gross negligence must "amount to wanton neglect for the safety of another."  *Id.* at 504 (quoting Iowa Code § 85.20).  Wanton neglect, according to *Thompson*, arises when the actor is indifferent "as to whether the act will injure another."  *Id.* at 505.  Under our caselaw, "Wantonness is said to be less blameworthy than an intentional wrong only in that instead of affirmatively wishing to injure another, the actor is merely willing to do so."  *Id.*; *see also Walker v. Mlakar*, 489 N.W.2d 401, 404 (Iowa 1992) (en banc) (noting that coemployee must undertake an intentional act, but need not intend to cause harm, in order to be grossly negligent); *Alden v. Genie Indus.*, 475 N.W.2d 1, 3 (Iowa 1991) (finding a triable issue of gross negligence on the part of coemployee supervisor where supervisor alleged they did not intend to cause some kind of bodily injury).

We now examine the degree to which a defendant must expect the injury in order to be grossly negligent under Iowa Code section 85.20 (2015).  Under the second element of gross negligence under *Thompson*,

"knowledge that injury" must be "a probable, as opposed to a possible, result of the danger." *Id.* at 505. In the past, we have stated that in order to be probable, injury must be "more likely than not." *Henrich v. Lorenz*, 448 N.W.2d 327, 334 n.3 (Iowa 1989) (en banc). In addition, the coemployee must know of "the peril to be apprehended" and engage in a "conscious failure to avoid the peril." *Thompson*, 312 N.W.2d at 505.

From the above analysis, it appears that a coemployee may act in a fashion that meets the definition of "gross negligence" when an injury is more probable than not and that such conduct might not be outside the scope of the term "accident" in the CGL policy. It is possible that a factfinder could find that a coemployee acted without intent to harm and with the expectation that an injury was more likely than not, but not with the expectation that the injury was highly likely or substantially certain to result. In other words, some, but not all, acts of gross negligence may not be accidents. *Cf. Buczkowski v. Allstate Ins.*, 526 N.W.2d 589, 590–91 (Mich. 1994) (finding that a result that might reasonably be expected is not necessarily a highly likely one). It is possible for a plaintiff to thread the needle by convincing a factfinder that acts or omissions of a coemployee gave rise to an expectation that an injury was more likely than not to occur, and thus amounts to gross negligence, but was not "highly likely" and therefore outside of coverage for accidents.

Here, the allegations are sufficient to permit the plaintiff to attempt to sail between the rocks of immunity established by Iowa Code section 85.20 and the shoals of a coverage defense under Article I of the CGL policy. The plaintiff alleges a long laundry list of alleged acts and omissions of Glen. Some occurred before the ride began, and others after Booher was thrown into the ride. At this early stage of the proceeding, based on the broad nature of the pleadings, we cannot say there is no

possibility that Booher may not be able to convince a factfinder that he has a claim that amounts to gross negligence but is within the scope of the coverage of the CGL policy.

**C. Coverage Under Section II.**  We now consider the alternate ground of coverage under section II of the CGL policy advanced by the Booher plaintiffs.  Certainly, the title of section II of the CGL policy indicates the provision relates not to coverage of risks but instead to the question of who is an insured.  Yet, while some of the language relates to who is an insured, there is also language in section II, particularly in the exclusions, that trims the scope of who is insured based upon types of risk.

There is also some use of language in the evolution of the policy that draws our attention.  When T.H.E. eliminated the bodily injury exclusion from section II(2)(a)(1), T.H.E. characterized the modification in a bolded heading as "**Additional Coverage**."  The Boohers seize on this "**Additional Coverage**" header, arguing that T.H.E. itself declared that section II is a "coverage" provision and, as a result, it should be treated as such in this litigation.

In our view, the issue does not turn on use of the term "coverage" in an endorsement to section II.  The central difference between the approach of the Booher plaintiffs and T.H.E. is this: the Booher plaintiffs believe section II is a mechanism to provide additional coverage for claims beyond section I, while T.H.E. sees section I and section II as independent screens and that an insured must satisfy the criteria in each section in order to be covered by the insurance.

But that's not how the CGL policy works.  The insuring clause in section I sets the parameters of the risks that are insured, while section II establishes who is insured.  A person with a claim under the policy must

satisfy the coverage requirements of the insuring clause in section I and be an "insured" under section II.  While it is true that T.H.E. uses the term "additional coverage" to describe an amendment to section II, the plain language of the endorsement applies only to determinations of who is an insured under section II.  It does not address at all risks that are covered as provided in section I.

Thus, the Booher defendants suggest that section II as amended by the endorsement and section I are in conflict, and therefore give rise to ambiguity.  We find they are not in conflict, but instead establish separate tests, *both* of which must be satisfied to give rise to a duty to defend and indemnify under the CGL policy.  As a result, we conclude that the language in section II of the CGL policy does not provide additional coverage of risks beyond those covered in section I.

**IV.  Conclusion.**

For the above reasons, we conclude that the decision of the district court on the motion for summary judgment should be reversed.

**REVERSED AND REMANDED.**

All justices concur except McDermott, J., who takes no part.